USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _3/13/18_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

JERMAINE DUNHAM                    :    11 Civ. 1223 (ALC)(HBP)

                    Plaintiff,     :    OPINION
                                        AND ORDER
     -against-                     :

CITY OF NEW YORK, et al.,          :

                    Defendants.    :

----------------------------------X

          PITMAN, United States Magistrate Judge:

I.   Introduction

          By notice of motion dated August 18, 2017, plaintiff

seeks leave to file a Third Amended Complaint (Plaintiff's Motion

to Amend, dated Aug. 18, 2017 (Docket Item ("D.I.") 72) ("Mot.");

Proposed Third Amended Complaint, dated Aug. 18, 2017 ("Proposed

TAC"), attached to Mot.).  For the reasons set forth below,

plaintiff's motion is granted in part and denied in part.

II.  Facts[1]

          This Section 1983 action arises from plaintiff's arrest

on February 15, 2008.  On the evening of February 14, 2008, the

_____

          [1]I recite only those facts relevant to my resolution of the
pending motion.

New York City Police Department ("NYPD") received reports of two attempted gun-point robberies of taxi drivers committed by two individuals in the area of the Simpson Street subway station in the Bronx, New York (Defendants' Memorandum of Law, dated Sept. 13, 2017 (D.I. 75) ("Def. Mem.") at 7). According to defendants, officers from several precincts, including defendant Officer Philip Lobello, were dispatched to search for the suspects (Def. Mem. at 7).

In his Amended Complaint, plaintiff alleges that, during the early morning of February 15, 2008, he was leaving a party in the Bronx and was walking towards a subway station in order to make his way back to Queens, where he lived (Amended Complaint dated Oct. 4, 2011 (D.I. 12) ("Am. Compl.") at 3).[2] Plaintiff alleges that he was stopped by Lobello and his police dog (Am. Compl. at 3). In compliance with Lobello's directive, plaintiff alleges that he presented his identification to Lobello (Am. Compl. at 3). Plaintiff further alleges that Lobello ordered him to stand against a nearby wall (Am. Compl. at 3). According to plaintiff, shortly thereafter, Lobello's police dog

---

[2]In the discussion of plaintiff's Amended Complaint that follows, citations to "Am. Compl. __" refer to specific pages, rather than numbered paragraphs, of plaintiff's Amended Complaint. Plaintiff's factual allegations are not broken down into separate paragraphs in the Amended Complaint.

began to bark, prompting plaintiff to ask that Lobello hold the police dog's leash tighter (Am. Compl. at 3). Lobello allegedly responded, "No! He's an officer and he can search you too!" (Am. Compl. at 3). Plaintiff claims that Lobello then unleashed the police dog without any justification or provocation, and that the police dog attacked plaintiff until he lost consciousness (Am. Compl. at 3). As plaintiff was lying face down on the sidewalk, bloodied and unconscious, he was arrested (Am Compl. at 3).[3]

Plaintiff was treated for his injuries at Lincoln Medical and Mental Health Center ("LMMHC") (Am. Compl. at 5, 8). As a result of the attack, plaintiff sustained multiple puncture wounds on his neck, rear, arms and forearms (Am. Compl. at 3, 5).

Although plaintiff made no mention of it in his Complaint or Amended Complaint, he alleges in his proposed Third Amended Complaint that he learned at LMMHC that he had been arrested for pointing a firearm at and attempting to shoot a police officer, and that a police dog had subdued him (Proposed TAC ¶ 12). In addition, defendants state in their Answer that plaintiff was charged with robbery, criminal possession of a weapon, menacing and criminal possession of stolen property following his arrest (Answer, dated Feb. 13, 2012 (D.I. 20)).

_____

[3]The arresting officer is alleged to have been defendant Lemar Oliver (Am. Compl. at 3).

Defendants also advise in their response to plaintiff's motion that a jury convicted plaintiff of criminal possession of a weapon and resisting arrest, but acquitted plaintiff of robbery, on April 12, 2011 (Def. Mem. at 8 n.2; <u>see</u> Mot. at 2, 3).[4] On May 13, 2011, plaintiff was sentenced to seven years in prison -- a sentence that he is currently serving -- and five years of post-release supervision (Def. Mem. at 7-8; <u>see</u> Mot. at 2).

On February 16, 2011, plaintiff commenced this Section 1983 action against Oliver and Lobello, former NYPD Commissioner Raymond Kelly and the City of New York (Complaint). Although plaintiff's Amended Complaint did not specify which of his federal rights were violated, plaintiff appears to be alleging claims for excessive force and false arrest under Section 1983 (Am. Compl. at 3).

On June 21, 2012, plaintiff sought leave of court to file a Second Amended Complaint (Motion to Amend the Amended Complaint, dated June 21, 2012 (D.I. 30)). The proposed Second Amended Complaint (1) asserted unspecified state law claims and (2) added 13 LMMHC employees as defendants (Proposed Second

---

[4]In his proposed Third Amended Complaint, plaintiff also refers to his acquittal on the robbery charge, and appears to acknowledge that he was convicted of an unspecified charge, but maintains his innocence with respect to the charge(s) of conviction (Pl. Mot. at 2; Proposed TAC ¶¶ 13-27).

Amended Complaint, dated Sept. 3, 2012, annexed as Ex. B to Declaration of Aimee K. Lulich, Esq., dated Sept. 13, 2017 (D.I. 76) ("Lulich Decl.")). While that motion was pending, plaintiff retained attorney David Segal to represent him in this action (Notice of Appearance, dated Nov. 11, 2013 (D.I. 45)).

By Opinion and Order dated May 2, 2014, the Honorable Andrew L. Carter, Jr., United States District Judge, granted in part and denied in part plaintiff's motion to file his proposed Second Amended Complaint (Opinion and Order of Judge Carter, dated May 2, 2014 (D.I. 52) ("May 2, 2014 Order")). Specifically, Judge Carter granted plaintiff leave to add the 13 LMMHC employees as defendants pursuant to Fed.R.Civ.P. 15(a)(2) and 15(c) (May 2, 2014 Order at 5-6). However, Judge Carter denied plaintiff's motion to the extent that it sought leave to assert any state law claims against both the named and proposed defendants (May 2, 2014 Order at 4-6). Judge Carter directed that plaintiff file a Second Amended Complaint with the appropriate amendments by no later than May 16, 2014 (May 2, 2014 Order at 7). That deadline passed without any submission from plaintiff or Segal; Judge Carter granted an extension of time for plaintiff to file his amended pleadings sua sponte and set a deadline of July 22, 2014, noting that he was "not inclined to grant further relief from this deadline unless good cause is shown" (Order of

Judge Carter, dated July 14, 2014 (D.I. 54) ("July 14, 2014
Order")). Although Segal appeared on plaintiff's behalf at a
pretrial conference held on July 21, 2014 (see Scheduling Order
of the undersigned, dated July 22, 2014 (D.I. 55)), neither he
nor plaintiff ever filed a Second Amended Complaint.

In March 2015, I advised plaintiff that Segal had been
suspended from the practice of law for one year beginning in
December 2014, and asked plaintiff how he wished to proceed
(Order of the undersigned, dated Mar. 27, 2015 (D.I. 66)("Mar.
27, 2015 Order")). Plaintiff chose to place the matter in
suspense until Segal's suspension ended; however, Segal has not
responded to communications from either plaintiff or the Court
(Mar. 27, 2015 Order; Letter of Jermaine Dunham to the under-
signed, dated July 7, 2015 (D.I. 69) ("Dunham's Letter"); see
Plaintiff's Applications for Pro Bono Counsel, dated Dec. 2, 2016
(D.I. 70) ("Pl. Pro Bono App.") at 4).[5] Plaintiff made numerous,
unsuccessful, attempts to secure competent counsel (see Pl. Pro
Bono App.).

---

[5]By letter, dated March 22, 2016, Segal's associate, Devon
M. Wilt, Esq., informed plaintiff that Segal had still not been
reinstated (Letter of Devon M. Wilt, Esq., to Jermaine Dunham,
dated Mar. 22, 2016 ("Wilt Letter"), annexed as Ex. B to Pl. Pro
Bono App.).

Plaintiff, proceeding pro se, filed the instant motion on August 18, 2017. Plaintiff's proposed amendments (1) add "Lieutenant Batignani"[6] as a defendant and (2) assert "new" claims for (a) assault, battery, intentional infliction of emotional distress and negligence under state law and (b) malicious prosecution under the Fourth and Fourteenth Amendments against Lobello, Oliver and proposed defendant Batignani (Proposed TAC ¶¶ 28-55). For the purpose of resolving this motion, I shall assume that plaintiff also intends to assert these claims against the remaining named defendants, Commissioner Kelly and the City of New York, and that his failure to do so was inadvertent.[7]

With respect to Batignani, plaintiff alleges, among other things, that one of the robbery victims provided Batignani

---

[6]Plaintiff has not provided a full name for Batignani and defendants claim that they are unable to locate any NYPD officer with that name. Plaintiff has submitted a transcript of a "suppression hearing" conducted in his underlying criminal proceeding as proof of the existence of Batignani and his involvement in the case (People v. Dunham, Index/No. 945-08, Hearing Transcript, dated Mar. 14, 2011, annexed as Ex. A to Plaintiff's Reply Memorandum of Law, dated Nov. 14, 2017 (D.I. 78) ("Reply Mem.")). The transcript contains testimony from an NYPD Lieutenant identified as Batignani.

[7]Plaintiff also seeks to dismiss the 13 LMMHC employees from the action. Because plaintiff never filed and served a complaint naming the 13 LMMHC employees, they are not, and have never been, defendants in this action and, thus, cannot be dismissed.

with a description of the suspects (Proposed TAC ¶¶ 4-5).[8]

Thereafter, plaintiff alleges, Batignani canvassed the area and observed, but lost track of, an individual fitting the description of one of the suspects and carrying something in his hand (Supp. to Proposed TAC ¶ 6). Batignani radioed a description and the approximate location of the individual to other officers involved in the search, including Lobello, and directed that they establish a perimeter around the area (Supp. to Proposed TAC ¶ 7). Plaintiff appears to allege that Batignani's directive led to plaintiff's arrest. Furthermore, plaintiff also appears to allege that he did not fit the description of the suspect that Batignani had allegedly conveyed to the responding officers (Proposed TAC ¶ 23). Plaintiff alleges that, although Batignani did not personally observe plaintiff's arrest, he learned of it when he arrived at the scene of arrest afterwards (Supp. to

---

[8]In addition to his proposed Third Amended Complaint, plaintiff also submitted what appears to be additional pleadings intended to supplement those set forth in his proposed Third Amended Complaint and which set forth the factual premise of his claims against Batignani in greater detail. Specifically, the first three pages of plaintiff's Reply Memorandum of Law contain separately numbered paragraphs that set forth additional details concerning the proposed claims against Batignani (Supplement to Proposed TAC, dated Nov. 14, 2017 ("Supp. to Proposed TAC"), annexed as Pages 1-3 to Reply Mem.). In the discussion of plaintiff's proposed amendments, citations to "Supp. to Proposed TAC ¶ __" refer to the specific numbered paragraphs of plaintiff's additional pleadings.

Proposed TAC ¶ 8). Plaintiff also states that Batignani learned by police radio that Lobello had stopped plaintiff as that stop was occurring (Mot. at 3).

Defendants argue that plaintiff's motion should be denied in its entirety due to plaintiff's failure to file his Second Amended Complaint by the deadline provided in Judge Carter's July 14, 2014 Order (Def. Mem. at 12-13). Furthermore, defendants appear to argue that plaintiff's Third Amended Complaint is redundant of his Amended Complaint, except for that it seeks to (1) add Lieutenant Batignani as a defendant, (2) assert state law tort claims and (3) assert a claim for malicious prosecution. Defendants argue that each of these amendments is futile and that plaintiff's motion to amend must, therefore, be denied.

III. Analysis

A. Legal Standards

The standards applicable to a motion to amend a pleading pursuant to Fed.R.Civ.P. 15(a)(2) are well stated and require only brief review. Leave to amend a pleading should be freely granted "when justice so requires." Fed.R.Civ.P. 15(a); Foman v. Davis, 371 U.S. 178, 182 (1962); Kroshnyi v. U.S. Pack Courier

Servs., Inc., 771 F.3d 93 (2d Cir. 2014); TechnoMarine SA v. Giftports, Inc., 758 F.3d 493 (2d Cir. 2014); City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA Inc., 300 F. App'x 33, 34 (2d Cir. 2008); Hanniford v. County of Dutchess, 17 Civ. 4166 (KBF), 2017 WL 5468767 at *4 n.4 (S.D.N.Y. Nov. 14, 2017) (Forrest, D.J.); Perrotta v. City Sch. Dist. of Yonkers, 16 Civ. 9101 (VB), 2017 WL 4236565 at *6 (S.D.N.Y. Sept. 22, 2017) (Briccetti, D.J.). "Nonetheless, the Court may deny leave if the amendment (1) has been delayed unduly, (2) is sought for dilatory purposes or is made in bad faith, (3) the opposing party would be prejudiced, or (4) would be futile." Lee v. Regal Cruises, Ltd., 916 F. Supp. 300, 303 (S.D.N.Y. 1996) (Kaplan, D.J.), aff'd, 116 F.3d 465 (2d Cir. 1997); see McCarthy v. Dunn & Bradstreet Corp., 482 F.3d 184, 200-01 (2d Cir. 2007); Morris Builders, L.P. v. Fidelity Nat'l Title Ins. Co., 16 Civ. 9114 (VB), 2017 WL 5032996 at *2 (S.D.N.Y. Nov. 2, 2017) (Briccetti, D.J.); Perrotta v. City Sch. Dist. of Yonkers, supra, 2017 WL 4236565 at *6.

A proposed amendment may be denied as futile "where the claim or defense proposed to be added has no colorable merit." Oliver v. DeMarinis & Co., 90 Civ. 7950 (SS), 1993 WL 33421 at *2 (S.D.N.Y. Jan. 29, 1993) (Lee, M.J.) (inner quotations omitted); see also Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 783 (2d Cir. 1984) (if the movant has

10

"colorable grounds for relief," justice requires that leave to amend be granted in the absence of undue delay, bad faith or prejudice). "The 'colorable grounds' requirement mandates that a district court may not deny a motion for leave to amend a pleading [on futility grounds] when said pleading is sufficient to withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." Children First Found. Inc. v. Martinez, 04 Civ. 0927 (NPM), 2007 WL 4618524 at *5 (N.D.N.Y. Dec. 27, 2007), citing in part Kassner v. 2nd Ave. Delicatessen, Inc., 596 F.3d 229, 244 (2d Cir. 2007); see also Estate of Ratcliffe v. Pradera Realty Co., 05 Civ. 10272 (JFK), 2007 WL 3084977 at *4 (S.D.N.Y. Oct. 19, 2007) (Keenan, D.J.); Journal Publ'g Co v. Am. Home Assurance Co., 771 F. Supp. 632, 635 (S.D.N.Y. 2007) (Leisure, D.J.) ("The Proposed Amended Complaint may therefore be scrutinized as if defendant's objections to the amendments constituted a motion to dismiss under Fed.R.Civ.P. 12(b)(6).").

In assessing the futility of a proposed amended pleading, the factual allegations set forth in the proposed amended pleading are assumed to be true. See Max Impact, LLC v. Sherwood Group, 09 Civ. 0902 (LMM), 2009 WL 2448108 at *1 (S.D.N.Y. Aug. 1, 2009) (McKenna, D.J.); Edwards v. City of N.Y., 07-CV-5286 (CPS)(RML), 2009 WL 1910740 at *1 (E.D.N.Y. June 29, 2009); Da Cruz v. Townmasters of N.J., 217 F.R.D. 126, 128 n.1 (E.D.N.Y.

11

2003); <u>Binder v. Nat'l Life of Vt.</u>, 02 Civ. 6411 (GEL), 2003 WL 21180417 at *2 (S.D.N.Y. May 20, 2003) (Lynch, then D.J., Cir. J.); <u>Gabourel v. Bouchard Transp. Co.</u>, 901 F. Supp. 142, 144 (S.D.N.Y. 1995) (Chin, then D.J., now C.J.). Where, as here, plaintiff is <u>pro se</u>, courts shall "liberally construe [plaintiff's] pleadings and briefings . . . reading such submissions to raise the strongest arguments they suggest." <u>Bertin v. United States</u>, 478 F.3d 489, 491 (2d Cir. 2007), <u>citing</u> <u>Cruz v. Gomez</u>, 202 F.3d 593, 597 (2d Cir. 2000) <u>and</u> <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir. 1994).

"To survive a motion to dismiss under [Fed.R.Civ.P.] 12(b)(6) . . . for failure to state a claim upon which relief can be granted, 'a complaint must contain . . . sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.'" <u>Shi-Hsin Chang v. Phoenix Satellite Television (U.S.), Inc.</u>, 14 Civ. 2686 (PKC), 2014 WL 5017838 at *1 (S.D.N.Y. Sept. 19, 2014) (Castel, D.J.), <u>quoting</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citation and internal quotations omitted); <u>see</u> <u>Virgil v. Town of Gates</u>, 455 F. App'x 36, 37 (2d Cir. 2012); <u>Smith v. NYCHA</u>, 410 F. App'x 404, 405-06 (2d Cir. 2011). A claim is plausible when its factual content "allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged. The plausibility standard is not

12

akin to a 'probability requirement,' but it asks for more than a
sheer possibility that the defendant has acted unlawfully."
Ashcroft v. Iqbal, supra, 556 U.S. at 678 (citations omitted).
"Where a complaint pleads facts that are merely consistent with a
defendant's liability, it stops short of the line between possi-
bility and plausibility for entitlement to relief."  Ashcroft v.
Iqbal, supra, 556 U.S. at 696 (internal quotations omitted).
Accordingly, "where the well-pleaded facts do not permit the
court to infer more than the mere possibility of misconduct, the
complaint has alleged -- but it has not 'show[n]' -- 'that the
pleader is entitled to relief.'"  Ashcroft v. Iqbal, supra 556
U.S. at 679, quoting Fed.R.Civ.P. 8(a)(2).

    "[T]he Complaint is deemed to include any written
instrument attached to it as an exhibit or any statements or
documents incorporated in it by reference."  Chambers v. Time
Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002), quoting Int'l
Audio Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d
Cir. 1995) (per curium); see Staehr v. Hartford Financial Servs.
Group Inc., 547 F.3d 406, 425 (2d Cir. 2007) ("[T]he general rule
is that a district court may not look outside the complaint and
the documents attached thereto in ruling on a Rule 12(b) motion
to dismiss . . . .").  In addition, "[e]ven where a document is
not incorporated by reference, the court may nevertheless con-

sider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006), quoting Chambers v. Time Warner, Inc., supra, 282 F.3d at 152-53. Finally, district courts "may also consider matters of which judicial notice may be taken." Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991).

Where a motion seeking leave to amend is made after the deadline set by a court Order, the party seeking amendment must meet a more rigorous standard. "[D]espite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in [an] order where the moving party has failed to establish good cause." Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000). The touchstone of "good cause" is the "diligence of the moving party." See Parker v. Columbia Pictures Indus., supra, 204 F.3d at 340, citing, inter alia, Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1419 (11th Cir. 1998) (per curium) (finding no good cause where party failed to discover necessary information and was on notice in advance of the deadline that her complaint was inadequate) and Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 610 (9th Cir. 1992) (refusing to find good cause under Rule 16(a) where party received notice long in

advance of the deadline that the complaint did not name all necessary parties).

"Absent extraordinary circumstances, a client assumes the risk of his attorney's actions and is bound even by the consequences of his attorney's negligence." Lastra v. Weil, Gotshal & Manges LLP, 03 Civ. 8756 (RJH)(RLE), 2005 WL 551996 at *4 (S.D.N.Y. Mar. 8 2005) (Ellis, M.J.), citing Chira v. Lockheed Aircraft, Corp., 634 F.2d 664, 666-67 (2d Cir. 1980) and Gadsden v. Jones Lang Lasalle Americas, Inc., 210 F. Supp. 2d 430, 436-37 (S.D.N.Y. 2002) (Motley, D.J.); JB Aviation, LLC v. R Aviation Charter Servs., LLC, CV-14-5175 (DRH)(AKT), 2016 WL 4444794 at *1 (E.D.N.Y. Aug. 23, 2016) (holding that attorney "inadvertence or oversight is not good cause for purposes of [Fed.R.Civ.P. 16(a)]"). Moreover, vague allegations by a plaintiff regarding his attorney's misconduct are "insufficient to establish good cause for" belated amendments. Guity v. Uniondale Union Free Sch. Dist., CV-12-1482 (SJF)(AKT), 2014 WL 795576 at *5 (E.D.N.Y. Feb. 27, 2014).

B. Application

As an initial matter, plaintiff's noncompliance with Judge Carter's July 14, 2014 Order directing him to submit his Second Amended Complaint by July 22, 2014, and the subsequent

15

delay of approximately three years between that deadline and the
date that he filed the present motion, cannot be attributed to
plaintiff's lack of diligence.  Rather, plaintiff's failure to
submit an amended complaint was principally caused by "extraordi-
nary circumstances" -- the well-established and detailed allega-
tions of Segal's attorney misconduct.  Specifically, on December
9, 2014, Segal was suspended from the practice of law for a
"pattern of misconduct" in a number of matters, including failing
to communicate with clients and ignoring court scheduling orders.
In re Segal, 123 A.D.3d 260, 997 N.Y.S.2d 72 (1st Dep't 2014).
Segal appears to have conducted himself in a similar manner with
respect to his representation of plaintiff here.  Not only did
Segal fail to submit plaintiff's Second Amended Complaint in
compliance with Judge Carter's July 14, 2014 Order, he failed to
advise plaintiff of his default.  In fact, Segal's communication
with plaintiff was so deficient that plaintiff was entirely
unaware that Segal had been suspended from the practice of law
until the Court informed plaintiff of this development in March
2015, approximately four months after the suspension had occurred
(Mar. 27, 2015 Order).  Segal's misconduct is aggravated by
plaintiff's incarceration, which made it impossible for plaintiff
to oversee Segal's work in any meaningful way.  In addition, the
delay of approximately three years was not due to any lack of

diligence on the part of plaintiff. After learning of Segal's suspension, I gave plaintiff the option of holding the matter in suspense until Segal was reinstated; plaintiff elected to do so (Mar. 27, 2015 Order). When plaintiff was informed by Segal's former associate that Segal had not returned to the practice of law (Wilt Letter), plaintiff attempted to find counsel (see Pl. Pro Bono App.). Only after his efforts to find counsel proved fruitless did plaintiff choose to proceed pro se; he then filed this motion to further amend his complaint.

Thus, because plaintiff's failure to submit a Second Amended Complaint and the subsequent delay were caused by extraordinary circumstances, he has established "good cause" for purposes of Fed.R.Civ.P. 16(b). Accordingly, I shall proceed to the merits of plaintiff's motion.

### 1. Addition of Defendant Batignani

Plaintiff's proposed Third Amended Complaint seeks to add Batignani as a defendant and asserts state law tort claims and Section 1983 claims against him as a supervisor. Defendants argue that both sets of claims are futile and, should, therefore, be denied.

17

a. <u>State Law Claims</u>

Plaintiff's proposed Third Amended Complaint asserts
state law claims of assault, battery, intentional infliction of
emotional distress and negligence against Batignani (Proposed TAC
¶¶ 40-48, 52-55). Defendants contend that those claims must fail
as a matter of law for the same reasons Judge Carter held that
state law tort claims plaintiff sought to assert in his proposed
Second Amended Complaint were deficient, namely, plaintiff has
failed to serve a notice of claim as required by New York's
General Municipal Law (May 2, 2014 Order at 4). Specifically,
Judge Carter's May 2, 2014 Order explained that, in order to
assert state law claims against individual employees of a munici-
pality,

> a plaintiff must serve notice of a claim against the
> [individual] to be sued within 90 days of the accrual
> of the claim. N.Y. Gen. Mun. Law § 50-e(1)(A)
> (McKinney). The cause of action must then be commenced
> within a hundred and ninety days after the claim ac-
> crues. N.Y. Gen. Mun. Law § 50-i(1)(a). The require-
> ment to file a notice of claim is "strictly construed
> by New York state courts, and failure to comply with
> this requirement 'requires a dismissal for failure to
> state a cause of action.'" <u>Hart v. City of N.Y.</u>, No.
> 11 Civ. 4678 (RA), 2013 WL 6130648, at *11 (S.D.N.Y.
> Nov. 18, 2013) [Abrams, D.J.)] (<u>quoting</u> <u>Hardy v. N.Y.</u>
> <u>City Health & Hosp. Corp.</u>, 164 F.3d 789, 792-93 (2d
> Cir. 1999)).

(May 2, 2014 Order at 4). <u>See</u> <u>Reyes v. City of N.Y.</u>, 11 Civ.
7084 (AT), 2014 WL 173412 at *7 (S.D.N.Y. Jan. 16, 2014) (Torres,

D.J.) (holding that the notice requirement under New York law applies to claims brought against the municipality and claims against the individual employees of a municipality). As noted in the May 2, 2014 Order, in order to comply with the notice of claim requirement under N.Y. Gen. Mun. Law §§ 50-e(1)(A) and 50-i(1)(a), plaintiff must have filed a notice of claim by May 21, 2008 and have initiated the action by August 29, 2008 (May 2, 2014 Order at 4). Judge Carter held that because plaintiff failed to allege that he had complied with this requirement in his proposed Second Amended Complaint, plaintiff's amendment to add "new" state law claims was futile and must be denied (May 2, 2014 Order at 4-5). Similarly, plaintiff does not allege that he satisfied the notice of claim requirement with respect to Batignani. Thus, plaintiff's motion to include state law claims against him is futile and, therefore, is denied.

### b.   Section 1983 Claims

Plaintiff's proposed Third Amended Complaint also appears to assert claims for excessive force, false arrest and malicious prosecution against Batignani as a supervisory defendant under Section 1983. Defendants argue that this amendment must be denied because it would be futile.

In order to establish a claim under Section 1983, a plaintiff must show that "(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994), citing Parrat v. Taylor, 451 U.S. 527, 535 (1991), overruled on other grounds, Daniel v. Williams, 474 U.S. 327 (1996); accord Fiedler v. Incandela, 222 F. Supp. 3d 141, 156 (E.D.N.Y. 2016); Guttilla v. City of New York, 14 Civ. 156 (JPO), 2015 WL 437405 at *5 (S.D.N.Y. Feb. 3, 2015) (Oetken, D.J.); Davis v. Lynbrook Police Dep't, 224 F. Supp. 2d 463, 475-76 (E.D.N.Y. 2002).

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1985), quoting Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986); accord Grullon v. City of New Haven, 720 F.3d 133, 138 (2d Cir. 2013); Lebron v. Mrzyglod, 14 Civ. 10290 (KMK), 2017 WL 365493 at *3 (S.D.N.Y. Jan. 24, 2017) (Karas, D.J.). If plaintiff has failed to allege plausibly the personal involvement of Batignani, then the Section 1983 claims asserted against him are futile. See Marom v. City

of New York, 15 Civ. 2017 (PKC), 2016 WL 916424 at \*14 (S.D.N.Y.

Mar. 7, 2016) (Crotty, D.J.).

Personal involvement of a state official for purposes

of Section 1983 can be shown by:

> (1) actual direct participation in the constitutional
> violation, (2) failure to remedy a wrong after being
> informed through a report or appeal, (3) creation of a
> policy or custom that sanctioned conduct amounting to a
> constitutional violation, or allowing such policy or
> custom to continue, (4) grossly negligent supervision
> of subordinates who committed a violation, or (5)
> failure to act on information indicating that unconsti-
> tutional acts were occurring.

Hernandez v. Keane, 341 F.3d 137, 145 (2d Cir. 2003), citing

Colon v. Coughlin, supra, 58 F.3d at 873;[9] see Avenue v. New

---

[9] The five types of personal involvement listed in the text
were first set forth by the Second Circuit in Colon v. Coughlin,
supra, 58 F.3d at 873. In Aschroft v. Iqbal, supra, 556 U.S. at
577, decided in 2009, the Supreme Court rejected the argument
that "a supervisor's mere knowledge of his subordinate's
discriminatory purpose amounts to the supervisor's violating the
constitution." There is, therefore, some question as to whether
all the types of personal involvement set forth in Colon,
particularly those which involve supervisory liability, survive
Iqbal. The Court of Appeals has acknowledged that the continuing
vitality of all the Colon categories remains unresolved following
Iqbal. See e.g., Grullon v. City of New Haven, 720 F.3d 133, 139
(2d Cir. 2014) ("Although the Supreme Court's decision in
Ashcroft v. Iqbal, 556 U.S. 62, 129 S.Ct. 1937, 173 L.Ed.2d 868
(2009), may have heightened the requirements for showing a
supervisor's personal involvement with respect to certain
constitutional violations, we need not reach Iqbal's impact on
Colon in this case . . . ."); Reynolds v. Barrett, 685 F.3d 193,
205 n.14 (2d Cir. 2012) ("We need not determine if the pattern-
or-practice framework can ever be used in a § 1983 suit against a
policy-making supervisory defendant, although we note our
(continued...)

York, 157 F. App'x 375, 377 (2d Cir. 2005) (summary order);

Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003); Lewis v.

Fisher, 08 Civ. 3027 (JG)(LB), 2009 WL 689803 at *3 (E.D.N.Y.

Mar. 12, 2009); Benitez v. Locastro, 9:04-CV-4239 (NAM), 2008 WL

4767439 at *12 (N.D.N.Y. Oct. 29, 2008).  The personal involve-

ment of a supervisor can be shown in one of four ways:

> (1) failure to take corrective action after learn-
> ing of a subordinate's unlawful conduct, (2) creation
> of a policy or custom fostering the unlawful conduct,
> (3) gross negligence in supervising subordinates who
> commit unlawful acts, or (4) deliberate indifference to
> the rights of others by failing to act on information
> regarding the unlawful conduct of subordinates.

Hayut v. State Univ. of New York, 352 F.3d 733, 753 (2d Cir.

2003), citing Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d

246, 254 (2d Cir. 2001) and Colon v. Coughlin, supra, 58 F.3d at

873.  In order to sustain a finding on a failure-to-supervise

theory, "[p]laintiff must show that the defendant knew or should

have known that there was a high degree of risk that his subordi-

nates would behave inappropriately, but either deliberately or

recklessly disregarded that risk by failing to take action that a

---

[9](...continued)
considerable skepticism on that question, in light of the Supreme
Court's decision in Ashcroft v. Iqbal, 556 U.S. 662, 676, 129
S.Ct. 1937, 173 L.Ed.2d 868 (2009)."). The continuing validity
of Colon remains unresolved and the issue continues to be a
matter of disagreement among District Judges within the Circuit.
Corbett v. Annucci, 16 Civ. 4492 (NSR), 2018 WL 919832 at *6 n.5
(S.D.N.Y. Feb. 13 2018) (Román, D.J.).

reasonable supervisor would find necessary to prevent such a risk, and that failure caused a constitutional injury to Plaintiff." Samuels v. Fischer, 168 F. Supp. 3d 625, 638 (S.D.N.Y. 2016) (Karas, D.J.) (quotation marks and citations omitted); accord Villafane v. Sposato, No. CV-16-3674 (JFB)(AKT), 2017 WL 4179855 at *14 (E.D.N.Y. Aug. 22, 2017) (Report & Recommendation), adopted at, 2017 WL 4157220 (E.D.N.Y. Sept. 15, 2017); see also Poe v. Leonard, 282 F.3d 123, 142 (2d Cir. 2002).

Plaintiff's bare allegation that Batignani is liable for failing to supervise his subordinates fails to allege sufficient facts to state a claim on a failure-to-supervise theory. "[G]eneralized contentions that [defendant] 'failed to supervise' [subordinates] are insufficient to establish his personal involvement." Mancuso v. Village of Pelham, 15 Civ. 7895 (KMK), 2016 WL 5660273 at *11 (S.D.N.Y. Sep. 29, 2016) (Karas, D.J.); accord McRae v. Gentile, No. 14-CV-783, 2015 WL 7292875 at *5 (N.D.N.Y. Oct. 20, 2015) ("Vague and conclusory allegations that a supervisor negligently failed to train or supervise subordinate employees are not sufficient to establish personal involvement so as to give rise to personal liability." (internal quotation marks omitted)) (Report & Recommendation), adopted at, 2015 WL 7300540 (N.D.N.Y. Nov. 18, 2015); Brooks v. Prack, 77 F. Supp. 3d 301, 313 (W.D.N.Y. 2014) ("Plaintiff's claim that Prack and Esgrow

23

failed to supervise their subordinates, without explaining how
they failed to supervise their subordinates, or which subordi-
nates they failed to supervise, does not satisfy even the most
minimal pleading standards.").

Even if I were to rely on facts asserted by plaintiff
outside of his proposed Third Amended Complaint suggesting that
Lobello radioed Batignani about plaintiff's stop and that
Batignani was "deliberately indifferent" to the unconstitutional
acts that were occurring (Mot. at 3, quoting Colon v. Coughlin,
supra, 58 F.3d at 873), plaintiff still fails to allege personal
involvement adequately. Reading plaintiff's proposed Third
Amended Complaint and his other filings in the light most favor-
able to him, all that plaintiff asserts is that Batignani re-
ceived a radio transmission stating that plaintiff had been
stopped by Lobello. However, "mere notification of alleged
wrongdoing does not establish personal involvement [of a supervi-
sory defendant]." McNair v. Kirby Forensic Psychiatric Center,
09 Civ. 6660 (SAS), 2010 WL 4446772 at *13 (S.D.N.Y. Nov. 5,
2010) (Scheindlin, D.J.). Plaintiff alleges no facts suggesting
Batignani either knew or should have known of the alleged consti-
tutional violations of which plaintiff complains. See Colon v.
Coughlin, supra, 58 F.3d at 874 (holding that neither gross
negligence nor deliberate indifference could be found where

defendant had no knowledge of underlying constitutional violation). Plaintiff is clearly relying on a pure

respondeat superior theory of liability, which is insufficient to sustain a Section 1983 claim seeking to impose supervisory liability. Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003) ("Mere 'linkage in the . . . chain of command' is insufficient to implicate a [supervisory official in a § 1983 claim]"), quoting Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985); accord Williams v. Savory, 87 F. Supp. 2d 437, 456 (S.D.N.Y. 2015) (Engelmayer, D.J.); see Santiago v. Comm'r of New York City Corr., 14 Civ. 6473 (PAE)(JCF), 2016 WL 680823 at *3 (S.D.N.Y. Feb. 18, 2016) (Francis, M.J.) (Report & Recommendation) ("[A] chain-of-command theory is not a permissible basis on which to premise individual liability [under Section 1983]."), adopted at, 2016 WL 4051861 (S.D.N.Y. July 26, 2016) (Engelmayer, D.J.).

Plaintiff fails to allege adequately the personal involvement on the part of Batignani and, therefore, plaintiff's Section 1983 claims asserted against him are futile. Accordingly, plaintiff's motion to amend to add Batignani as a supervisory defendant is denied.

2. Plaintiff's State Law Tort Claims
   Asserted Against Named Defendants

Plaintiff's proposed Third Amended Complaint also adds
state law tort claims for assault, battery, intentional inflic-
tion of emotional distress and negligence against Lobello and
Oliver (TAC ¶ 40-48, 52-55). As noted above, I shall assume that
plaintiff intends to assert these claims against named defendants
Commissioner Kelly and the City of New York as well. See Smith
v. City of New York, 1 F. Supp. 3d 114, 117 (S.D.N.Y. 2013)
(Schofield, D.J.) (assuming pro se plaintiff's failure to assert
claims against a named defendant was inadvertent and assuming
that plaintiff intended to assert against that defendant).
Plaintiff previously sought to assert unspecified state law
claims against these defendants in his proposed Second Amended
Complaint, but Judge Carter denied the addition of these claims
(May 2, 2014 Order).

As explained on pages 18-19, in order to state a claim
under state law against an individual employee of a municipality,
a plaintiff must allege that he complied with the notice of claim
requirement set forth in N.Y. Gen. Mun. Law §§ 50-e(1)(A),
50-i(1)(a). Failure to do so requires dismissal of such claims.
See Hart v. City of N. Y., supra, 2013 WL 6130648 at *11.
Because plaintiff does not allege that he complied with the

notice of claim requirement with respect to his state law claims against individual defendants Lobello, Oliver and Kelly, those claims are futile.

In addition, the notice of claim requirement described above also applies to state law claims asserted against municipalities, as well as their individual employees. See Reyes v. City of N.Y., supra, 2014 WL 173412 at *7. Plaintiff fails to allege that he satisfied this requirement with respect to defendant City of New York and, therefore, that claim is also futile. Accordingly, plaintiff's motion for leave to amend is denied to the extent that he seeks to add state law claims against the named defendants.

### 3. Plaintiff's § 1983 Malicious Prosecution Claim

Plaintiff's proposed Third Amended Complaint appears to assert a "new" claim for malicious prosecution under the Fourth and Fourteenth Amendment against proposed and named defendants (Proposed TAC ¶ 29; Mot. at 2-3).[10]

---

[10]With respect to "a municipality like the City of New York, a plaintiff must additionally allege that the denial of his or her constitutional right was caused by an official policy or custom." Smith v. City of New York, supra, 1 F. Supp. 3d at 121, citing Monell v. Department of Soc. Servs. of City of N.Y., supra, 436 U.S. at 694 and Torraco v. Port Auth. Of N.Y. & N.J.,
(continued...)

To state a claim for malicious prosecution under Section 1983, a plaintiff must plead each of these five elements:

> (1) [T]hat the defendant initiated a prosecution against plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, . . . (4) that the prosecution was terminated in plaintiff's favor . . . [and] (5) [that there was] a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights.

Smith v. City of New York, supra, 1 F. Supp. 3d at 121, quoting Rohman v. New York City Trans. Auth., 215 F.3d 208, 215 (2d Cir. 2000).

Plaintiff's proposed Third Amended Complaint alleges that, before he was stopped by Lobello, he had been stopped and searched by two other unidentified NYPD officers (Proposed TAC ¶¶ 8-10). Plaintiff appears to allege that that search revealed only that he had a cell phone in his possession; plaintiff alleges that he was unarmed (Proposed TAC ¶¶ 9, 14). Plaintiff goes on to allege that approximately five minutes later he was stopped by Lobello, despite the fact that Lobello knew that

---

[10] (...continued)
614 F.3d 129, 140 (2d Cir. 2010) ("'[T]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes plaintiff to be subjected to (3) a denial of a constitutional right.'" (alteration in original)), quoting Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007).

plaintiff had previously been stopped, searched and permitted to proceed by other officers (Proposed TAC ¶¶ 10-12). Thus, plaintiff alleges that Lobello lacked probable cause to stop him and acted with malice. Shortly thereafter, plaintiff was subdued by Lobello's police dog and arrested. Plaintiff was apparently charged with several crimes following his February 15, 2008 arrest. As noted above, following a jury trial, he was convicted of criminal possession of a weapon and resisting arrest, but was acquitted of robbery.

Defendants contend that plaintiff cannot sustain a claim for malicious prosecution because his underlying criminal proceeding resulted in two convictions and, therefore, he cannot satisfy the requirement of a "favorable termination" (Def. Mem. at 11, citing Heck v. Humphrey, 512 U.S. 477, 483 (1994)). However, plaintiff correctly points out that, in light of the Second Circuit's decision in Janetka v. Dabe, 892 F.2d 187, 190 (2d Cir. 1989), a malicious prosecution claim may lie where a split verdict was rendered in plaintiff's underlying criminal proceeding.

In Janetka, the Second Circuit found that plaintiff's underlying criminal proceeding terminated in his favor where he was convicted of disorderly conduct but acquitted of resisting arrest following a jury trial. The Second Circuit, in concluding

that Janetka's disorderly conduct conviction did not bar his

malicious prosecution claim with respect to the charge of resist-

ing arrest, found it significant that

> Janetka was charged with two distinct offenses involv-
> ing distinct allegations.  The disorderly conduct
> charge involved Janetka's actions directed at the
> unidentified [H]ispanic man; the resisting arrest
> charge involved his actions directed at the officer's
> attempts to arrest him.  The elements of each charge
> are different, neither charge is a lesser included
> offense of the other.

Janetka v. Dabe, supra, 892 F.2d at 190.  The Second Circuit also

examined the comparative severity of the two charges and con-

cluded that "[t]o hold that an acquittal does not constitute a

favorable termination would be particularly inappropriate in this

case, where the charge for which Janetka was acquitted was more

serious than the one for which he was convicted."  Janetka v.

Dabe, supra, 892 F.2d at 190.

Courts in this Circuit frequently apply Janetka where a

plaintiff, charged with multiple accounts, is acquitted on counts

that arise from a distinct set of factual allegations from the

counts for which he was convicted.  See Ostroski v. Town of

Southhold, 443 F. Supp. 2d 335, 337 (E.D.N.Y. 2006) (Janetka

requires a court to look at "whether the elements of each charge

are different, whether one charge is a lesser included offense of

the other, and whether the alleged convictions were directed at

different people"), quoting Pichardo v. New York Police Dep't, 98 Civ. 429 (DLC), 1998 WL 812049 at *3 (S.D.N.Y. Nov. 18, 1998) (Cote, D.J.) (internal quotations omitted); see also Evans v. City of New York, No. 12-CV-5341 (MKB), 2015 WL 1345374 at *20 (E.D.N.Y. Mar. 25, 2015) (Report & Recommendation) ("[T]he leading Second Circuit case on the question of favorable termina- tion in the context of split verdicts[] requires that a district court confronted with a malicious prosecution claim in which the plaintiff seeks to show that an acquittal constitutes a favorable termination ask whether the acquittal and conviction charges involved were 'distinct offenses involving distinct allega- tions'"), quoting Janetka v. Dabe, supra, 892 F.2d at 190.

Application of Janetka in this instance directs a finding that plaintiff may proceed on his malicious prosecution claim with respect to the robbery charge because the charge was a "distinct offense involving distinct allegations" from the charges of resisting arrest and criminal possession of a weapon. Specifically, plaintiff was convicted of resisting arrest and criminal possession of a weapon; both offenses related to his conduct towards Lobello immediately prior to and during plain- tiff's arrest. Conversely, the robbery charge related to plain- tiff's alleged conduct that occurred well before the time of his arrest and that was directed towards two taxi drivers. Moreover,

the elements of the charges of which he was convicted of do not share the same elements as, nor are they lesser-included-offenses of, the robbery charge of which he was acquitted. Therefore, because the elements and the alleged conduct relating to the robbery charge are separate and distinct from the conduct under-lying and the elements of the criminal convictions, under Janetka, the prosecution of the robbery charge ended in plain-tiff's favor.

Although Janetka also teaches that it is "particularly inappropriate" to find that a favorable termination is lacking where the offenses of conviction and acquittal stem from distinct factual circumstances and where the offense of acquittal is more serious than the offense of conviction, Janetka "d[oes] not suggest that [an acquittal of the more serious charge is] re-quired for a malicious prosecution claim to exist." see Ostroki v. Town of Southhold, supra, 443 F. Supp. 2d Supp. at 337; Sassower v. City of White Plains, 89 Civ. 1267 (MJL), 1995 WL 222206 at *4 n.8 (S.D.N.Y. Apr. 13, 1995) (Lowe, D.J.) ("The distinctness of the charges appears to be the more controlling factor [than the comparative severity of the related charges] in this Circuit."). Nevertheless, even if I assume that Janetka requires an acquittal of the more serious charge for a Section 1983 malicious prosecution claim to be viable, neither plaintiff

nor defendants provide sufficient information to enable me to compare the seriousness of the charges of which plaintiff was acquitted with the charges of which plaintiff was convicted and, thus, any analysis of this issue would be speculative. However, this lack of clarity with respect to plaintiff's potential sentence exposure does not preclude plaintiff's malicious prosecution claim at this stage; the charges that he was acquitted and convicted of, respectively, were sufficiently distinct such that a jury could reasonably find that part of plaintiff's underlying criminal proceeding terminated in his favor. See Graebe v. Falcetta, 726 F. Supp. 36, 39 (E.D.N.Y. 1989), aff'd 946 F.2d 883 (2d Cir. 1991) (applying Janetka in finding that conviction for speeding charge did not bar a malicious prosecution claim premised on acquittal of charges for resisting arrest and attempted escape); Goree v. Gunning, 738 F. Supp. 79, 80 (E.D.N.Y. 1990) (finding that conviction of resisting arrest, disorderly conduct and harassment barred malicious prosecution claim premised on the charges of acquittal, to wit, criminal possession of a weapon and menacing, because the allegations of those charges were not distinct).

Defendants also argue that, even if plaintiff has adequately stated a claim for malicious prosecution, his claim is time-barred under the applicable statute of limitations (Def.

33

Mem. at 11-12). Patterson v. City of Oneida, 375 F.3d 206, 225 (2d Cir. 2004); Murphy v. Lynn, 53 F.3d 547, 548 (2d Cir. 1995) ("It is clear from our precedents that the applicable statute of limitations for § 1983 actions in New York is three years . . . and that, for claims based in malicious prosecution, this period starts to run only when the underlying criminal action is conclusively terminated." (citations omitted)). Defendants assert that plaintiff's underlying criminal proceeding was terminated on April 12, 2011, when he was convicted of criminal possession of a weapon and resisting arrest and acquitted of robbery. Accordingly, defendants argue that the limitations period terminated no later than April 12, 2014. Plaintiff does not address the timeliness of his malicious prosecution claim.

As noted above, it is well established in this Circuit that when defendant objects to plaintiff's motion to amend under Fed.R.Civ.P. 15(a)(2) as futile, the proposed amended complaint must be "scrutinized as if defendant's objections to the amendments constitute[] a motion to dismiss under Fed.R.Civ.P. 12(b)(6)," which includes the requirement that the court limit its consideration to the complaint, documents or statements attached thereto as an exhibit or incorporated by reference, documents or statements that are integral to the complaint and judicially noticeable facts. See Shi-Hsin Chang v. Phoenix

34

Satellite Television (US), Inc., supra, 2014 WL 5017838 at *1
(holding that the district court "must examine only the well-
pleaded factual allegations, if any" in determining whether
plaintiff survived defendant's futility objections under
Fed.R.Civ.P. 15(a)(2); NECA-IBEW Pension Trust Fund v. Bank of
America Corp., 10 Civ. 440 (LAK)(HBP), 2013 WL 620257 at *5
(S.D.N.Y. Feb. 15, 2013) (Pitman, M.J.) (holding that district
court could not consider factual material outside the complaint
for purposes of determining whether plaintiffs' proposed amended
pleading survived defendants' futility objections).

      Plaintiff's proposed Third Amended Complaint and the
documents attached thereto and incorporated by reference do not
identify the date on which his underlying criminal proceeding
terminated, i.e., the date on which the jury rendered its ver-
dict.  In addition, plaintiff does not attach or refer to any
documents or statements in his pleadings indicating that his
underlying criminal proceeding terminated on April 12, 2011.
Rather, the facts demonstrating that plaintiff's malicious
prosecution claim is time-barred can be gleaned only from defen-
dant's Memorandum of Law, which is not within the narrow range of
factual sources that a district court may consider at this stage.
See Staehr v. Hartford Financial Servs. Group Inc., supra, 547
F.3d at 425 ("We have stated that, '[d]ismissal under

Fed.R.Civ.P. 12(b)(6) is appropriate when a defendant raises . . . [a statutory bar] as an affirmative defense and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'"), quoting Conopco, Inc. v. Roll INt'l, 231 F.3d 82, 86 (2d Cir. 2000)); Chisholm v. United of Omaha Life Ins. Co., 514 F. Supp. 2d 318, 324 (D. Conn. 2007) ("While a statute of limitations defense is most often pleaded as an affirmative defense and may require a factual inquiry beyond the face of the complaint, a defendant may raise the statute of limitations in a Rule 12(b)(6) motion '[w]here the dates in a complaint show that an action is barred by a statute of limitations . . . .'"), quoting Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 162 (2d Cir. 1989).

Accordingly, because plaintiff's pleadings do not provide the date on which his underlying criminal proceeding terminated, defendants' argument that plaintiff's malicious prosecution claim is time-barred lacks any factual support, and plaintiff's motion for leave to add a "new" claim for malicious prosecution is granted

## V.  Conclusion

For all the foregoing reasons, plaintiff's motion to amend is granted in part and denied in part.  Plaintiff's motion is granted to the extent that he seeks to assert a Section 1983 malicious prosecution claim against existing defendants.  The motion is denied to the extent plaintiff seeks to assert state law tort claims against any party or to add Batignani as a defendant.  Plaintiff shall file the Third Amended Complaint by no later than March 30, 2018.

The Clerk is requested to mark Docket Item 72 closed.

Dated:  New York, New York
        March 13, 2018

SO ORDERED

HENRY PITMAN
United States Magistrate Judge

Copy mailed to:

Mr. Jermaine Dunham, DIN 11-R-0201
Wallkill Correctional Facility
50 McKendrick Road
P.O. Box G
Wallkill, New York 12589

Copy transmitted to

Aimee K. Lulich, Esq.
Assistant Corporation Counsel
City of New York
100 Church Street
New York, New York 10007