D+F

**CAPTION:**

Jermaine Dunham  v.
Police Officer P. Lobello, Police
Officer Lemar Oliver

**CERTIFICATE OF SERVICE**
Docket Number: 11-CV-1223 (ALC)
Jury Trial Demanded

RECEIVED MAR 27 2018
CHAMBERS OF
HENRY PITMAN
U.S.M.J.

I, Jermaine Dunham, hereby certify under penalty of perjury that on
(name)
March 22, 2018, I served a copy of 3rd Amended Complaint
(date)

_____
(list all documents)

by (select all applicable)*

☒ United States Mail
☐ Federal Express
☐ Overnight Mail
☐ Facsimile
☐ E-mail
☐ Hand delivery

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/29/18

on the following parties (complete all information and add additional pages as necessary):

| Name | Address | City | State | Zip Code |
|---|---|---|---|---|
| Aimee K. Lulich, Esq | 100 Church Street | New York | NY | 10007 |
| Name | Address | City | State | Zip Code |
| Name | Address | City | State | Zip Code |
| Name | Address | City | State | Zip Code |

March 22, 2018
Today's Date

_____
Signature

*If different methods of service have been used on different parties, please indicate on a separate page, the type of service used for each respective party.

Certificate of Service Form



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JERMAINE DUNHAM,

            Plaintiff

   -against-

Police Officer P. Lobello, Police Officer
Lemar Oliver, Police Officer Lieutenant
Batignani,

            Defendants

**THIRD AMENDED COMPLAINT**

11-CV-1223 (ALC) (HBP)

Jury Trial Demanded

1.     Plaintiff, JERMAINE DUNHAM, brings this action against individual police officers and supervisors for damages arising out of a use of excessive force, other unconstitutional policies and actions, and common-law claims arising out of the unlawful stop of plaintiff by Defendant police on February 15, 2008 in the County of the Bronx of the City of New York.

**JURISDICTION**

2.     Plaintiff brings this action against Defendants to redress the deprivation of rights secured to plaintiff by the United States Constitution under the Fourteenth, Eighth, Fifth, and Fourth Amendments, 42 U.S.C.A. § 1983, and the common law.

3.     Plaintiff is a citizen of the State of New York. Each Defendant is, upon information and belief, a citizen of the State of New York. Jurisdiction over this matter is conferred upon the court pursuant to 28 U.S.C.A. §§ 1331, 1332, and 1343(a)(3) and 42 U.S.C.A. § 1983.

4.     Plaintiff also invokes supplemental jurisdiction of this court over state claims against Defendant for common-law violations pursuant to 28 U.S.C.A. § 1367 as

the common-law claims form part of the same case or controversy. Venue is proper in this District pursuant to 28 U.S.C.A. § 1391.

## PARTIES

5.       Plaintiff is an African-American male and a resident of the County of Queens of the State of New York, and is currently incarcerated and in the custody of the New York State Department of Corrections and Community Supervision at the Wallkill Correctional Facility, 50 McKendrick Road, P.O. Box G, Wallkill, New York 12589, in the County of Ulster of the Northern District of New York.

6.       Defendant Police Officers, PHILLIP LOBELLO, LEMAR OLIVER, and Police Officer Lieutenant BATIGNANI, are sued both individually and in their official capacities. At all times pertinent, Defendant Police Officers and Supervisor were employed by the City of New York Police Department. At all times, Defendants acted under the color of law, of statute, ordinance, regulation, custom, or usage.

## FACTS

7.       On the morning of February 14, 2008 in the County of Queens plaintiff dressed in blue work pants, a grey sweater, tan boots, and a full length black coat with gray lining and fur around the color that had a left and right side outside pocket below the waist area and a left and right side outside pocket below the chest/sternum area. There was no inside pockets. During the late evening of this date at approximately 9:00 P.M. I arrived in the borough of the Bronx and exited the number five (5) train where I met with a female acquaintance name Jenny who was escorting me to a house party. After we exited the train station we travelled approximately two-three long city blocks before arriving at one of a series of row type housing where the party was in progress. I remained at the party approximately three hours and consumed two shot glasses of alcohol and one bottle of beer before leaving at approximately 12:15 A.M.

8.          I was not doing anything illegal or wrong on my way back to the number five (5) train at the Freemand train station. There was a lot of police activity in the area including a helicopter, patrol cars marked K-9, marked and unmarked patrol cars. A marked patrol car pulled up onto the sidewalk blocking my path and two police officers exited the vehicle with guns drawn and ordered me to turn around and place my hand on the wall. After searching me and only removing my cellphone the police officer who was wearing a white shirt with a single bar on the left and right side of each end of his collar requested some identification from me and I produced my temporary D.M.V. photo identification card.

9.          The other police officer was standing near the passenger side of the patrol car speaking with someone that was occupying the backseat. In a loud voice the police officer at the rear of the marked patrol car stated "that's not him" and the officer with my identification card and cellphone handed the property back and told me I could leave. At no time during this exchange did the officers make a radio transmission of the stop and I did not observe either officer write down any information about the stop. I could not observe whether the person in the backseat of the police vehicle was a male or female and did not hear the person's voice at the time he or she was speaking with the officer.

10.         Approximately five minutes later a marked K-9 patrol vehicle stooped about five yards in front of me and the officer rolled down the window and spoke from the vehicle. He inquired what I was doing in the area and where I was coming from? I explained that I was headed to the Freeman train station to catch the train to take me back to Queens, that I had been at a house party a few blocks back. Then he asked if I had some kind of identification on me and I said "I was searched a few

3

minutes ago by police officers." As I was reaching into my pants pocket for the temporary D.M.V. identification card the officer exited the vehicle with his K-9 dog. While extending my arm to offer the identification card to the officer his dog in a frenzy was barking and jumping at me, continuously yanking on the leash.

11.     I placed my back up against the wall as instructed by the officer and asked as he approached me that he hold onto the leash tighter. In an aggressive tone he responded "No. He's an officer and he can search you too!" Without provocation or any movement from me that could be suggesstive of a threat the officer deliberately released the leash and his dog jumped on me. Despite yelling for the officer to call off his dog he did nothing to prevent the continued attack which resulted in multiple bites on my body.

12.     There was point during the attack that I lost consciousness and then blacked out on the pavement. Upon regaining consciousness and realizing that I was in a hospital I asked a nurse what happened to me. I also became aware that there were handcuffs on both my left arm and leg attached to the bed. The nurse picked up an admission record and stated that it said I was under arrest because a "trained police dog tried to defend police officer from gun shot at the time when weapon was pointed at his direction." In addition, the nurse explained that I had a wound 7.5 cm to the left side of my neck area and a wound 2.5. to my left arm at the inside interior area of the forearm. After approximately one week in the hospital I was transported to the forty-second precinct where I was photographed weraing the same clothing that I had been arrested in and was taken by hospital staff and recorded on a hospital admission record.

---

4

13.     As a direct and proximate result of the acts and omissions of the defendants, plaintiff continues to suffer and feel pain from the injuries caused by the defendant Lobello and the other officers, was forced to suffer pain and mental cruelty, was deprived of physical liberty, and was forced to be subjected to malicious and false prosecution.

14.     At all times pertinent to these allegations, Plaintiff was unarmed, did not pose a threat of death or grievious bodily injury to the defendants.

15.     At no time did defendant Lobello or any of the other defendants have probable cause to believe Plaintiff had committed or was committing a crime.

16.     Defendant Lobello and the other defendant officers acted with actual malice toward Plaintiff and with willful and wanton indifference to and deliberate disregard for the statutory and constitutional rights of Plaintiff. Defendant Lobello actions and the actions of the other defendant officers constitute unreasonable and excessive use of force and deprivation of liberty without due process of law.

17.     Upon information and belief each and every defendant knew that the Plaintiff had not been in possession of a firearm and never pointed a firearm in the direction of any police officer.

18.     Upon information and belief each and every defendant knew that the Plaintiff had not been the identified as the person that committed an armed robbery of a livery cab driver.

19.     Upon information and belief each and every defendant knew that the Plaintiff had not committed the act of resisting arrest.

20.        Upon information and belief the defendants were in possession of a video retrieved from the camera surveillance system of the livery cab driver that was a victim of armed robbery and that video was exculpatory evidence of Plaintiff's innocence.

21.        Upon information and belief the defendants are still in possession of a video retrieved from the livery cab driver's camera surveillance that shows the Plaintiff is innocent of committing the crime of armed robbery.

22.        Upon information and belief the defendants were in possession of police radio transmissions that gave a general description of the two male black persons clothing that committed the crime of armed robbery against a livery cab driver.

23.        On February 15, 2018 Plaintiff was five feet ten inches tall, one hundred and seventy pounds, approximately, light skin color, and he had the unique hair style of waist length dredlocks. Upon information and belief Plaintiff did not meet the physical description of either of the two armed robbery suspects during the early morning of Feb. 15th, and there was no probable cause for the police to stop Plaintiff twice.

24.        Each and every defendant intentionally conspired with each other to create and file or have filed police documents that contained false statements and information to aid in the prosecution of the Plaintiff.

25.        Each and every defendant wantonly and with total disregard did with an intent to knowingly deprive Plaintiff of statutory and constitutional rights give false and perjured testimony in a Court of Law against the Plaintiff.

26.        Upon information and belief the livery cab driver robbery victim described his assailants as two male blacks wearing all black clothing and carrying a gun, that they stole his black vehicle. At the time of Plaintiff's arrest he was not driving a stolen black vehicle that belonged to the robbery victim.

27.        Upon information and belief the livery cab driver robbery victim informed the police that his livery cab had a working and operational video/camera surveillance in his stolen black vehicle that recorded the events of the robbery.

## COUNT I

### VIOLATION OF CONSTITUTIONAL RIGHTS
### DEFENDANTS LOBELLO, OLIVER, BATIGNANI

(Claim for Compensatory Damages)

28.        Plaintiff incorporates by reference paragraphs 1 through 27.

29.        The intentional canine K-9 attack by Defendants Lobello, Oliver, and Batignani violated the rights of Plaintiff guaranteed by the Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution, for which Defendants are individually liable.

## COUNT II

### VIOLATION OF CONSTITUTIONAL RIGHTS
### DEFENDANTS LOBELLO, OLIVER, BATIGNANI

(Claim for Exemplary Damages)

30.        Plaintiff incorporates by reference paragraphs 1 through 29.

31.        The intentional canine K-9 attack by Defendants Lobello, Oliver, and Batignani when Plaintiff was unarmed and did not pose a threat of death or grievous bodily injury to Defendants or others, when Defendants had no lawful authority to

arrest Plaintiff or to use deadly or nondeadly force against Plaintiff, was done with actual malice toward Plaintiff and with willful and wanton indifference to and deliberate disregard for the constitutional rights of Plaintiff. Plaintiff if thus entitled to exemplary damages.

COUNT III

VIOLATION OF STATUTORY CIVIL RIGHTS
DEFENDANTS LOBELLO, OLIVER, BATIGNANI

(Claim for Compensatory Damages)

32.        Plaintiff incorporates by reference in paragraphs 1 through 31.

33.        The intentional canine K-9 attack by Defendants Lobello, Oliver, and Batignani when Plaintiff was unarmed and did not pose a threat of death or of grievous bodily injury to Defendants or others, when Defendants had no lawful authority to arrest Plaintiff or to use deadly or nondeadly force against Plaintiff, was done with actual malice toward Plaintiff and with willful and wanton indifference to and the deliberate disregard for the statutory civil rights of Plaintiff.

COUNT IV

VIOLATION OF CONSTITUTIONAL RIGHTS
DEFENDANTS LOBELLO, OLIVER, BATIGNANI

(Claim for Compensatory Damages)

34.        Plaintiff incorporates by reference paragrapghs 1 through 33.

35.        At all pertinent times Defendant Batignani and other unknown police supervisors who supervised the officers who unlawfully violated Plaintiff's rights encouraged and tolerated the policy and practice. Defendant Batignani refused to adequately direct, supervise, or control defendant officers so as to prevent the

violation of Plaintiff's constitutional rights.

36.         Defendants Lobello, Oliver, and Batignani were acting outside the scope of their employer policies and practices and pursuant to personal practices which were the moving force, proximate cause, or affirmative link behind the conduct causing Plaintiff's injuries. Defendant Lobello, Oliver, and Batignani are therefore liable for the violation of Plaintiff's constitutional rights by Defendants Lobello, Oliver, and Batignani.

### COUNT V

#### CONSPIRACY TO VIOLATE CIVIL RIGHTS
#### DEFENDANTS LOBELLO, OLIVER, BATIGNANI

(Claim for Compensatory Damages)

37.         Plaintiff incorporates by reference in paragraph 1 through 36.

38.         Defendants Lobello, Oliver, and Batignani conspired to violate Plaintiff's statutory civil rights in violation of 42 U.S.C.A. § 1983, for which the Defendants are individually liable.

39.         Defendants Lobello, Oliver, and Batignani willful and wanton act of withhold exculpatory evidence of Plaintiff's innocence, manufacture false police reports and provide perjurious testimony for the malicious prosecution of Plaintiff for crimes not committed violated Plaintiff's statutory civil rights, for which the Defendants are individually liable.

### COUNT VI

#### ASSAULT AND BATTERY
#### DEFENDANTS LOBELLO, OLIVER, BATIGNANI

(Claim for Compensatory Damages)

40.         Plaintiff incorporates by reference paragraphs 1 through 39.

41.         The canine K-9 attack and use of nondeadly force by Defendants Lobello, Oliver, and Batignani when Defendants had no lawful authority to arrest Plaintiff, when Plainitff was unarmed and did not pose a threat of death or grievous bodily injury to Defendants or others, was without justification or provocation, was excessive, and constitutes assault and battery for which Defendants Lobello, Oliver, and Batignani are indivdually liable.

42.         As a proximate cause and result of the assault and battery committed by Defendants Lobello, Oliver, and Batignani, Plaintiff has suffered and sustained permanent injuries and scarring to his body. These injuries and scarring have caused and will continue to cause Plaintiff great pain and suffering, both mental and physical.

## COUNT VII

### ASSAULT AND BATTERY
### DEFENDANTS LOBELLO, OLIVER, BATIGNANI

(Claim for Exemplary Damages)

43.         Plaintiff incorporates by reference paragraphs 1 through 42.

44.         The intentional canine K-9 atatck by Defendants Lobello, Oliver, and Batignani, when Plaintiff was unarmed and did not pose a threat of death or grievous bodily injury to Defendants or others, when Defendants did not have lawful authority arrest Plaintiff or to use deadly or nondeadly force against Plaintiff, was done with actual malice toward Plaintiff and with willfull and wanton indifference to and the deliberate disregard for human life and the rights of Plaintiff. Plaintiff is thus entitled to exemplary damages.

---

### COUNT VIII

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### DEFENDANTS LOBELLO, OLIVER, BATIGNANI

(Claim for Compensatory Damages)

45. Plaintiff incorporates by reference paragraphs 1 through 44.

46. Defendants Lobello, Oliver, and Batignani intentionally allowed a canine K-9 dog to attack Plaintiff in a manner that was extreme, outrageous, and unjustified, and caused Plaintiff to suffer physical and emotional distress for which Defendants Lobello, Oliver, and Batignani are individually liable.

### COUNT IX

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### DEFENDANTS LOBELLO, OLIVER, BATIGNANI

(Claim for Exemplary Damages)

47. Plaintiff incorporates by reference paragraphs 1 through 46.

48. The intentional canine K-9 attack of Plaintiff by Defendnats Lobello, Oliver, and Batignani, was unjustified and done with actual malice and wanton indifference to and deliberate disregard for human life and the rights of Plaintiff. Plaintiff is thus entitled to exemplary damages.

### COUNT X

### RESPONDEAT SUPERIOR LIABILITY DEFENDANT
### BATIGNANI

(Claim for Compensatory Damages)

49. Plaintiff incorporates by reference paragraphs 1 through 48.

50. At all times hereto, Defendant Batignani was acting within the scope

of his employment as a supervisory officer for the New York City Police Department.

51.     At all time pertinent hereto, Defendant Batignani was acting outside the scope of his employer's policy and practices and is liable for compensatory damages under the doctrine of respondeat superior for the intentional torts of the Defendants Lobello and Oliver committed under the color of law and within the scope of their employment.

## COUNT XI

### NEGLIGENCE DEFENDANTS LOBELLO, OLIVER, BATIGNANI

(Claim for Compensatory Damages)

52.     Plaintiff incorporates by reference paragraphs 1 through 51.

53.     Defendants Lobello, Oliver, and Batignani, while acting as agents and employees for the City of New York Police Department, in their capacity as police officers owed a duty to Plaintiff to perform their police duties without the use of excessive force. Defendnats use of force upon Plaintiff, when Plaintiff was unarmed and did not pose a threat of death or grievous bodily injury to Defendants or other constitutes negligence for which Defendants Lobello, Oliver, and Batignani are individually liable.

54.     Defendants Lobello, Oliver, and Batignani use of force upon Plaintiff when Defendants had no lawful authority to arrest Plaintiff or to use force against Plaintiff constitutes negligence for which Defendnats are individually liable.

55.     As a proximate cause and result of Defendants negligent use of excessive force, Plaintiff has sustained permanent scarring and injuries and Plaintiff's injuries have caused and will continue to cause Plaintiff pain and suffering, both physical and mental.

---

## COUNT XII

### NEGLIGENCE DEFENDANTS LOBELLO, OLIVER, BATIGNANI

(Claim for Exemplary Damages)

56. Plaintiff incorporates by reference paragraphs 1 through 55.

57. The negligent canine K-9 attack of Plaintiff by Defendants Lobello, Oliver, and Batignani when Plaintiff was unarmed and did not pose a threat of death or grievous bodily injury to Defendants or others, and when Defendants had no lawful authority to arrest Plaintiff, was done with willfull and wanton indifference to and deliberate disregard to human life and the rights of Plaintiff. Plaintiff is hereby entitled to exemplary damages.

58. Batignani owed a duty to Plaintiff to supervise and otherwise control police officers in the use of deadly force and other matters incidental to the exercise of police functions. Defendant Batignani failed to provide adequate supervision and control of Defendants Lobello and Oliver, which failure constitutes negligence.

59. As a proximate result of Defendant Batignani's negligent failure to provide adequate supervision and control of Defendants Lobello and Oliver, Plaintiff has sustained permanent injuries and these injuries have caused and will continue to cause Plaintiff pain and suffering, both mental and physical.

## COUNT XIII

### MALICIOUS ABUSE OF PROCESS, FALSE ARREST, AND FALSE IMPRISONMENT DEFENDANTS LOBELLO, OLIVER, AND BATIGNANI

(Claim for Compensatory Damages)

60. Plaintiff incorporates by reference paragraphs 1 through 59.

61. Defendants Lobello, Oliver, and Batignani used criminal process against Plaintiff in order to intimidate Plaintiff and to dissuade Plaintiff from

asserting Plaintiff's rights against Defendants Lobello, Oliver, and Batignani and in order to cover up their own wrongdoing and to avoid civil and criminal liability for their own acts.

62.     Defendants Lobello, Oliver, and Batignani falsely arrested and falsely imprisoned Plaintiff.

63.     Defendants Lobello, Oliver, and Batignani falsely prepared arrest reports, arrest memos, police complaint reports and other documents.

64.     Defendants Lobello, Oliver, and Batignani falsely arrested and reported Plaintiff committed the acts of robbery by displaying a firearm and stealing a certain sum of United States currency.

65.     Defendants Lobello, Oliver, and Batignani falsely arrested and reported Plaintiff committed the acts of Criminal Mischief, Resisting Arrest, and Criminal Possession of a Firearm.

66.     Defendants Lobello, Oliver, and Batignani falsely testified in a State Court criminal proceeding against Plaintiff.

67.     As a proximate result of this malicious abuse of process, false arrest, and false imprisonment, Plaintiff suffered damages.

WHEREFORE, Plaintiff requests that this court enter judgment against the Defendants and award the following amounts:

a.   Twelve million five hundred thousand dollars, $12,500,000.00 compensatory damages in favor of Plaintiff;

b.   Twelve million five hundred thousand dollars, $ 12.500,000.00 exemplary damages in favor of Plaintiff;

---

c. Costs of this action, including reasonable attorney fees to the Plaintiff, and

d. Such other and further relief as the Court may deem appropriate.

Dated: _March_____, _22_, 2018
       Wallkill, New York 12589

_____
Plaintiff, Pro-Se
Wallkill Correctional Facility
50 McKendrick Rd, Box G
Wallkill, New York 12589

15