USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: __03/10/2021__

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------- x
JERMAINE DUNHAM,                               :
                                               :
                              **Plaintiff,**   :
                                               :     **11-cv-01223 (ALC)**
                -against-                       :
                                               :     **OPINION & ORDER**
CITY OF NEW YORK, ET AL.,                       :
                                               :
                              **Defendants.**  :
                                               :
------------------------------------------------------------------- x

**ANDREW L. CARTER, JR., District Judge:**

Plaintiff Jermaine Dunham (hereinafter, "Plaintiff" or "Mr. Dunham") brings this action under 42 U.S.C. § 1983 against the City of New York, and Police Officers Lamar Oliver and Philip Lobello (collectively, "Defendants"). Plaintiff alleges multiple violations of his federal constitutional rights including the use of excessive force, malicious prosecution and deliberate indifference by Officers Oliver and Lobello. Plaintiff also asserts claims of municipal liability against the City of New York.

Defendants filed a motion for summary judgment as to all of Plaintiff's claims. Plaintiff filed a motion to seal certain submissions made in connection with the summary judgment motion. For the reasons set forth below, Plaintiff's motion to seal is **GRANTED**, and Defendants' motion for summary judgment is **GRANTED** in part and **DENIED** in part.[1]

---

[1] Plaintiff filed a motion to seal four exhibits filed in support of Plaintiff's opposition to Defendants' motion for summary judgment. ECF No. 156. These exhibits include Plaintiff's medical records (Ex. 1), copies of grand jury transcripts (Exs. 7 and 8), and a document produced and designated confidential by Defendants under the Protective Order entered in this case (Ex. 11). The Court recognizes that there is a strong First Amendment presumption of public access to judicial documents and proceedings. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20, 123-24 (2d Cir. 2006). However, court documents may be sealed if "specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* at 120. After careful review of Plaintiff's submissions, including their memorandum of law in support of their motion to seal, the Court concludes that Plaintiff's unopposed motion should be **GRANTED**. The documents Plaintiff wishes to seal are medical records, *McGuirk v. Swiss Re Fin. Servs. Corp.*, No. 14-cv-9516, 2015 WL 13661685, at *1 (S.D.N.Y. Mar. 30, 2015) ("Medical information is among the types of information often made subject to a sealing order."); grand jury transcripts, *United States v. Strevell*, No. 05-cr-477, 2009 WL 577910, at *4 (N.D.N.Y.

## PROCEDURAL HISTORY

Plaintiff initiated this action *pro se* on February 16, 2011.[2] ECF No. 2. Mr. Dunham filed

an Amended Complaint on October 4, 2011. ECF No. 12.[3] The case was reassigned from Judge

Naomi Reice Buchwald to this Court on January 12, 2012. ECF No. 16. The case was then

referred to Magistrate Judge Henry B. Pitman for General Pretrial. ECF No. 18. Defendants filed

an answer to the Amended Complaint on February 13, 2012. ECF No. 20. David Segal appeared

on behalf of Mr. Dunham on November 14, 2013. ECF No. 45. This Court granted Plaintiff leave

to file a Second Amended Complaint to add § 1983 claims against new defendants. ECF No. 52.

However, no Second Amended Complaint was ever filed. ECF Nos. 54, 79. A status conference

was scheduled by Judge Pitman for March 20, 2015 but did not proceed as Judge Pitman learned

that Plaintiff's attorney had been suspended from the practice of law for a year. ECF No. 66. Mr.

Dunham subsequently requested pro bono counsel to represent him and the Court denied his

request without prejudice. ECF Nos. 70-71. On March 13, 2018 Judge Pitman granted Plaintiff

leave to file a Third Amended Complaint to add a § 1983 malicious prosecution claim against

existing Defendants. ECF No. 79. On March 29, 2018, Plaintiff filed a Third Amended

Complaint. ECF No. 80.[4] On May 4, 2018, the Court adopted Judge Pitman's report and

recommendation dismissing Plaintiff's Third Amended Complaint to the extent it did not comply

---

Mar. 4, 2009) ("[S]ome . . . interests are routinely accepted as higher values and countervailing factors, including . . . the protection of grand jury secrecy."); and a document designated confidential by the producing party pursuant to the Protective Order entered in this case. Plaintiff is **ORDERED** to file redacted versions of the documents referenced above on ECF **within 30 days of the filing of this Opinion & Order**. The Court reserves the right to request additional briefing on whether these documents should remain sealed at a later stage in this litigation.
[2] In addition to the City of New York and Officer Oliver, Plaintiff also asserted claim against the NYC Police Department/Police Commissioner Raymond Kelly a John Doe Defendant who was described as the attending physician at Lincoln Medical and Mental Health Center ("LMMHC"). Judge Buchwald dismissed Plaintiff's claims against the NYC Police Department and John Doe on March 21, 2011. ECF No. 8.
[3] In his Amended Complaint, Plaintiff added as Defendants the NYC Police Department/Police Commissioner Raymond Kelly, Officer Lobello, and Alain Polynice, the attending physician at LMMHC. ECF No. 12.
[4] Plaintiff's Third Amended Complaint only listed as Defendants Officers Lobello and Oliver, as well as Officer Batignani. ECF No. 80. This was in clear violation of Judge Pitman's March 13, 2018 order which expressly stated that Plaintiff's motion to amend his complaint to add Officer Batignani as a defendant was denied. ECF No. 79.

with Judge Pitman's order. ECF No. 84. On August 8, 2018, the Court directed the Clerk of

Court to seek pro bono counsel to represent Plaintiff for the limited purpose of conducting

discovery. ECF No. 86. On October 26 and October 29, 2018 Maxwell Brown and Jason

Kornmehl of Sullivan & Cromwell LLP filed notices of limited appearance, respectively. ECF

Nos. 87, 88.[5] Fact discovery was scheduled to be completed by April 8, 2019, however, that

deadline was extended to August 1, 2019 due to continuing discovery disputes. ECF Nos. 89, 98,

103. On October 2, 2019, this case was reassigned from Magistrate Judge Pitman to Magistrate

Judge Sarah L. Cave. On October 28, 2019, Judge Cave granted Plaintiff leave to file a Fourth

Amended Complaint ("FAC") to add *Monell* claims against the City of New York, which

Plaintiff filed on November 1, 2019. ECF Nos. 117-119. Defendants answered the FAC on

November 20, 2019. ECF No. 122. On December 10, 2019, Defendants filed a letter motion to

stay and bifurcate *Monell* discovery pending Defendants' motion for summary judgment. ECF

No. 124. On February 11, 2020, the Court granted the letter motion and also granted Defendants

leave to file a motion for summary judgment. ECF No. 139. Defendants filed a motion for

summary judgment and supporting memorandum of law on April 3, 2020 ("Defs.' Mot."). ECF

Nos. 144, 147. Plaintiff filed a motion to seal and an opposition to Defendants' motion for

summary judgment on June 10, 2020 ("Pl. Opp."). ECF Nos. 156-57. Defendants filed a reply on

July 13, 2020 ("Defs.' Reply"). ECF No. 164. Defendants' motion for summary judgment is

deemed fully briefed. After careful consideration, Defendants' motion for summary judgment is

hereby **GRANTED** in part and **DENIED** in part.

---

[5] Mr. Kornmehl and Mr. Brown filed renewed notices of limited appearance on June 3 and July 18, 2019, respectively. ECF Nos. 102, 106.

# BACKGROUND

The circumstances giving rise to this case are largely disputed. *See* Pl.'s Resp. Defs.' R.

56.1 Stmt. ("Pl.'s 56.1 Resp.").

## A.  Undisputed Facts Before Plaintiff's Arrest

It is undisputed that on February 14, 2008, Plaintiff took the subway to go to a

Valentine's Day party a few blocks away from Freeman Station in the Bronx. *Id.* ¶¶ 4-6, 12-13.

After a few hours, Plaintiff left the party by himself but became lost on the way back to the

subway station. *Id.* ¶¶ 14-17. That same night, Officer Lobello was assigned to canine patrol

covering Manhattan and the Bronx on the 10:00 p.m. to 6:35 a.m. tour. *Id.* ¶ 29. Officer Lobello

responded to Freeman Street and Chisolm Street after receiving a radio call regarding the search

for the perpetrator of an armed robbery of a taxicab. *Id.* ¶¶ 30-31. Officer Oliver was assigned to

crime patrol with the anti-crime unit that night and was eventually also directed to respond to the

area in connection with the robbery. *Id.* ¶¶ 69-70.

Once Officer Lobello received a description, he conducted a canvas by driving around the

area trying to locate the suspects, accompanied by his police dog Rocco. *Id.* ¶ 33. Shortly after

Officer Lobello began his search for the armed robbers, he saw Plaintiff walking. *Id.* ¶ 35.

Plaintiff waved at Officer Lobello's approaching vehicle while Plaintiff walked in the middle of

the street. *Id.* ¶ 36. After stopping his vehicle, Officer Lobello could not hear Plaintiff since

Rocco was barking, so he exited the vehicle. *Id.* ¶ 38. Once Officer Lobello exited the vehicle, he

asked Plaintiff for his identification and the location from where Plaintiff had been coming. *Id.*

¶ 45. Plaintiff told Officer Lobello that he had been coming from a party and that he was lost and

was trying to find his way to a train station. *Id.* ¶¶ 46-47. Officer Lobello told Plaintiff to back up

and place his hands against the wall of a van. *Id.* ¶ 48. After this point Plaintiff's and

Defendants' version of events are largely disputed, so the Court will lay them out separately for ease of reference and understanding.

### B. Disputed Facts During and Immediately After Plaintiff's Arrest

1. *Plaintiff's Version of Events*

According to Plaintiff, as he reached for his identification, Officer Lobello let the police dog out of the car. *Id.* ¶ 50. After Officer Lobello handed Plaintiff back his identification and Mr. Dunham put it away, Plaintiff believed he was free to leave. *Id.* ¶ 51. As Plaintiff "proceeded to turn," Officer Lobello pushed his hand against Mr. Dunham's chest to stop him from leaving. *Id.* ¶ 52. When Officer Lobello placed his hand on Plaintiff's chest, he felt "something like a gun," though he did not know if it was actually a gun. *Id.* ¶ 53; Zangrilli Decl., Ex. G, Lobello Dep. at 169:17-169:24 ("Lobello Dep."). According to Plaintiff, after Officer Lobello touched his chest, he immediately released Rocco to attack him, without giving him any warning. Pl.'s 56.1 Resp. ¶¶ 54, 58, 59. The police dog immediately bit into Plaintiff's arm and dragged him down to the street. *Id.* ¶¶ 55, 61, 63. After being bit by Rocco, Plaintiff was lying in the street and did not resist Officer Lobello. *Id.* ¶¶ 56, 64. Rocco continued biting Plaintiff on his head and neck even though he was not resisting. *Id.* ¶¶ 57, 63.

Over the course of approximately two minutes of biting Plaintiff, the police dog's teeth punctured Plaintiff's coat and clothing and penetrated his flesh underneath, ripped out pieces of his hair and caused a laceration on his neck. *Id.* ¶ 63. Officer Lobello only removed Rocco long after it was apparent that Plaintiff was on the ground and subdued, though Mr. Dunham does not recall being handcuffed. *Id.* ¶¶ 64, 67.

After Rocco stopped biting Plaintiff, Officers Lobello and Oliver continued their investigation and did not provide Plaintiff with first aid treatment or inquire about his injuries, even though they had both received training in first aid and observed Plaintiff actively bleeding

in the street. *Id.* ¶¶ 104, 106, 108.[6] Officer Lobello did not remember calling EMS for Plaintiff.[7] *Id.* ¶ 105; Lobello Dep. at 192:18-192:24. While Plaintiff was at the hospital, Officer Oliver brought the victim of the robbery to identify Plaintiff as the perpetrator of the armed robbery. Pl.'s 56.1 Resp. ¶ 86. This was the first time Plaintiff saw the victim of the robbery. *Id.*

    2.  *Defendants' Version of Events*

According to Defendants, while Officer Lobello interacted with Plaintiff, Rocco was barking in the front seat of the vehicle. Defs.' R. 56.1 Stmt. ¶ 50. Plaintiff attempted to leave the scene and walk past him at which point Officer Lobello placed his hand on his chest to prevent him from leaving the scene. *Id.* ¶¶ 51-52. Officer Lobello felt a hard object he believed to be a gun. *Id.* ¶ 53. Officer Lobello believed Plaintiff was trying to escape and pushed him onto the hood of his police car and grabbed his right arm. *Id.* ¶¶ 54-55. As Officer Lobello and Plaintiff "grappled," Plaintiff began reaching towards the area where Officer Lobello had felt the gun. *Id.* ¶ 57. As Officer Lobello and Plaintiff struggled, Officer Lobello told Plaintiff to stop and gave him several warnings that he would let his police dog out of the vehicle. *Id.* ¶ 58. As they continued to struggle, Officer Lobello brought Plaintiff to the ground and opened the car door to let Rocco out. *Id.* ¶ 61. As Plaintiff was going to the ground, Officer Lobello saw a key fall from Plaintiff's person. *Id.* ¶ 62.

When Officer Lobello opened the door to let Rocco out, Plaintiff's head was right next to where Rocco exited the vehicle and Rocco bit Plaintiff on the head, then on the neck and then on his arm. *Id.* ¶ 63. Officer Lobello was able to subdue and handcuff Plaintiff only after Rocco bit and held Plaintiff's arm. *Id.* ¶ 64. Once Officer Lobello was able to get Plaintiff in handcuffs, he

---

[6] The fact that Officers Lobello and Oliver received first aid training and observed Plaintiff bleeding in the street is undisputed. Defs.' Resp. Pl.'s Stmt. Add'l Material Facts ¶¶ 106, 108 ("Defs.' 56.1 Resp.").
[7] The fact that neither Officer Lobello nor Officer Oliver remembered calling EMS for Plaintiff is undisputed. Defs.' 56.1 Resp. ¶ 105.

put Rocco back in the car. *Id.* ¶ 67. It is undisputed that when Officer Lobello searched Plaintiff's chest area, he recovered a loaded semi-automatic handgun from inside his jacket. *See* Pl.'s 56.1 Resp. ¶ 68.

Officer Lobello told Officer Oliver what had transpired with Plaintiff when Officer Oliver arrived on the scene and gave him the gun and keys he recovered from Plaintiff. Defs.' R. 56.1 Stmt. ¶¶ 71-72, 73-75. At Plaintiff's criminal trial, Officer Lobello testified that he "made sure that EMS was called." Defs.' 56.1 Resp. ¶ 104; Brown Decl., Ex. 4, Lobello Crim. Tr. at Dunham001683:7-15 ("Lobello Crim. Tr."). And, at his subsequent deposition, Officer Lobello testified that it was his "common practice to make sure that" he or someone else calls EMS. Lobello Dep. at 192:18-192:24. Furthermore, both Officers Lobello and Oliver observed Plaintiff with EMS at the scene. Defs.' R. 56.1 Stmt. ¶ 76; *see also* Zangrilli Decl., Ex. I, Oliver Dep. at 30:12-30:16; 90:22-93:4 ("Oliver Dep."); Lobello Dep. at 188:16-19. According to Defendants, the victim of the armed robbery was brought to the scene and he identified Mr. Dunham as the individual who robbed him at gunpoint. Defs.' R. 56.1 Stmt. ¶ 86.

### C.  Undisputed Facts After Plaintiff's Arrest

It is undisputed that Plaintiff remembers seeing an ambulance at the scene and that he was treated by EMS at the scene. Pl.'s 56.1 Resp. ¶¶ 76, 78, 79. Plaintiff was also taken to Lincoln Medical Center. *Id.* ¶¶ 66, 80. Officer Lobello completed a Canine Utilization Report in connection with Plaintiff's arrest. *Id.* ¶ 84. He also documented a positive "show-up identification procedure" had occurred. *Id.* ¶ 85.

Officer Oliver signed Plaintiff's criminal court complaint and Plaintiff was arraigned on charges that included robbery, possession of a weapon, resisting arrest and grand larceny. *Id.* ¶¶ 92, 93. Following Plaintiff's arrest, Plaintiff was indicted by a grand jury for charges including robbery in the first, second and third degrees, resisting arrest, and criminal possession

of a weapon in the second degree. *Id.* ¶ 94. Officers Lobello and Oliver testified in Plaintiff's criminal trial. *Id.* ¶¶ 95-96. They both testified under oath and were cross-examined by Plaintiff's criminal defense attorney during a suppression hearing. *Id.* ¶¶ 98-100.

During Plaintiff's criminal trial, the jury was instructed on the charges they would need to decide upon. *Id.* ¶ 101. On April 12, 2011, Plaintiff was convicted of resisting arrest and criminal possession of a weapon in the second degree and acquitted on the robbery charges. *Id.* ¶ 97.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 56, summary judgment is proper where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The moving party has the burden "to demonstrate that no genuine issue respecting any material fact exists." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994) (citing *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir. 1975)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is no issue of material fact where the facts are irrelevant to the disposition of the matter. *See Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail & Rigging, LLC*, 967 F. Supp. 2d 756, 761 (S.D.N.Y. 2013); *see also Anderson*, 477 U.S. at 248 (holding that a fact is material if it would "affect the outcome of the suit under the governing law"). "Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence

demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (internal citations and quotation marks omitted).

In deciding a summary judgment motion, courts must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Niagara Mohawk Power Corp. v. Jones Chemical Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (citing to *Anderson*, 477 U.S. at 255). Courts may not assess credibility nor may they decide between conflicting versions of events, because those matters are reserved for the jury. *Jeffreys v. City of New York*, 426 F.3d 549, 553-54 (2d Cir. 2005). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." *Id*. (quoting *Anderson*, 477 U.S. at 252) (emphasis in original).

## DISCUSSION

### I. There are Genuine Issues of Material Fact Pertaining to Plaintiff's Excessive Force Claim That Preclude Summary Judgment

"[W]here a claim for excessive force 'arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment'" which protects against unreasonable seizures. *Cugini v. City of New York*, 941 F.3d 604, 612 (2d Cir. 2019) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)). Therefore, even though Plaintiff asserts his § 1983 excessive force claim pursuant to both the Fourth and Fourteenth Amendments, Plaintiff's claim is properly analyzed under the Fourth Amendment. *Id.*

To prevail on a § 1983 excessive force claim pursuant to the Fourth Amendment, "the factfinder must determine whether, in light of the totality of the circumstances faced by the arresting officer, the amount of force used was objectively reasonable at the time." *Amnesty Am.*

*v. Town of West Hartford*, 361 F.3d 113, 123 (2d Cir. 2004) (internal citation omitted). The application of this standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* (internal citation and quotation marks omitted). The reasonableness inquiry is an objective one and "requires a court to view officers' actions in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation or the 20/20 vision of hindsight." *Cugini*, 941 F.3d at 612 (internal citation and quotation marks omitted). "Given the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Amnesty Am.*, 361 F.3d at 123 (internal citation omitted). As discussed below, the Court finds that Plaintiff's allegations are sufficient to create genuine issues of material fact as to the objective reasonableness of the degree of force used by Officer Lobello and thus summary judgment as to this claim must be denied.

Defendants put forth three arguments in support of their motion for summary judgment on Plaintiff's excessive force claim: (1) that Plaintiff is collaterally estopped from relitigating that he resisted arrest; (2) that the force used by Officer Lobello was reasonable under the circumstances; and (3) that Officer Lobello is entitled to qualified immunity. The Court is not persuaded by these arguments and will address each in turn.

1. *Plaintiff's Conviction for Resisting Arrest Does Not Preclude an Excessive Force Claim Against Officer Lobello*

Defendants argue that Plaintiff is collaterally estopped from disputing that he resisted arrest and therefore the excessive force claim should be dismissed. *See* Defs.' Mot. at 5-8.

10

However, it is well established that a conviction for resisting arrest in state court does not "necessarily preclude a subsequent claim of excessive force in federal court." *Sullivan v. Gagnier*, 225 F.3d 161, 165 (2d Cir. 2000) (listing cases). An excessive force claim is not precluded by a plaintiff's conviction for resisting arrest "unless facts actually determined in his criminal conviction that were necessary to the judgment of conviction are incompatible with the claim of excessive force being raised in the subsequent civil suit." *Id.* at 166. Conducting this analysis requires the Court to apply collateral estoppel rules of the state in which the prior judgment was rendered, which in this case is New York. *Id.*

Under New York law, collateral estoppel applies "if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the plaintiff had a full and fair opportunity to litigate the issue in the earlier action." *Sullivan*, 225 F.3d at 166 (quoting *Parker v. Blauvelt Volunteer Fire Co.*, 712 N.E.2d 647, 651 (N.Y. 1999)) (internal quotation marks omitted). This doctrine requires a "detailed examination of the record in the prior state criminal case, including the pleadings, the evidence submitted and the jury instructions, in order to determine what issues were actually litigated and necessary to support a final judgment on the merits." *Sullivan*, 225 F.3d at 166. The burden is on the party seeking preclusion to establish that the issues in both actions are identical. *Id.* The burden is on the opponent to establish the lack of a full and fair opportunity to litigate the issue in the earlier action. *Parker*, 712 N.E.2d at 651.

The two state court proceedings Defendants rely upon in asserting a collateral estoppel defense are Plaintiff's criminal trial and related suppression hearing.[8] Defendants have not

---

[8] The parties do not dispute that the suppression hearing and Plaintiff's criminal trial did not afford Plaintiff a full and fair opportunity to litigate the issue in the earlier action and thus the Court will focus its analysis on the other two elements of the collateral estoppel doctrine. *See* Pl. Opp. at 13-15.

shown that the jury at Plaintiff's criminal trial decided any facts that would be "incompatible with the claim of excessive force." The jury instruction given regarding resisting arrest stated: "Under our law, a person is guilty of resisting arrest when he or she intentionally prevents or attempts to prevent a police officer from affecting an authorized arrest of himself or herself."[9] Brown Decl., Ex. 10 at Dunham002284 ("Ex. 10"); Pl.'s 56.1 Resp. ¶ 114. The jury did not complete any special verdict form, nor did they answer any special interrogatories such that Defendants could show that any facts that would be "incompatible with the claim of excessive force" were necessarily decided. *See Bookless v. Ireland*, No. 3:03-cv-123, 2005 WL 8166197, at *3 (D. Conn. Mar. 3, 2005).

On reply, Defendants assert that the instruction given to the jury is "simply incompatible with [P]laintiff's claim that his only resistance was the initial attempt to walk away when being questioned, and would undermine the jury's finding" especially because Plaintiff also "believed he was free to leave." Defs.' Reply at 2. Defendants cite no case law in support of this proposition. The Court cannot surmise what credibility determinations the jury made in Plaintiff's criminal trial—for all we know, the jury could have determined that Plaintiff was lying when he said that he believed he was free to leave.

---

[9] The court went on to state that "[i]ntent means conscious objective or purpose. Thus, a person intentionally prevents or attempts to prevent a police officer from affecting [sic] an authorized arrest of himself or herself when his or when her conscious objective or purpose is to do so. An arrest is authorized when the police officer making the arrest has reasonable cause to believe that the person being arrested has committed a crime. Reasonable cause does not require proof that the crime was, in fact, committed. Reasonable cause exists when a police officer has knowledge of facts and circumstances sufficient to support a reasonable belief that a crime has been or is being committed. In order for you to find the defendant guilty of this crime, the People are required to prove from all the evidence in the case beyond a reasonable doubt both of the following two elements. One, that on or about February 15, 2008 in the County of the Bronx, the defendant, Jermaine Dunham, personally or by acting in concert with another, prevented or attempted to prevent a police officer from effecting an authorized arrest of himself. And two, that the defendant did so intentionally. Therefore, if you find that the People have proven beyond a reasonable doubt both of those elements, you must find the defendant guilty of the crime of resisting arrest as charged in the third count." Ex. 10. at Dunham002284-2285.

Next the Court considers the suppression hearing conducted in relation to Plaintiff's criminal trial. The Court concludes that Plaintiff is collaterally estopped from arguing certain facts, however, these facts are not fatal to his claim as there are other genuine issues of material fact which could lead a reasonable jury to conclude that the force used in executing Mr. Dunham's arrest was excessive. The suppression hearing at issue was held pursuant to *Mapp, Dunaway*, *Wade, Crews* and *Huntley* to determine (1) the legality of the detention and subsequent arrest of Plaintiff and (2) the legality of identifications made by two witnesses, including the victim of the armed robbery; and (3) whether a statement Plaintiff made was spontaneous and voluntarily obtained. Zangrilli Decl., Ex. D., Decision & Order (dated Mar. 15, 2011) ("Ex. D"). In concluding that Plaintiff's arrest was legal, Judge Dawson appears to have relied on the fact that Officer Lobello felt what "appeared to be a gun on [Plaintiff's] person" which was eventually recovered. Ex D. at Dunham002403. Plaintiff does not dispute these facts. *See* Pl.'s 56.1 Resp. ¶¶ 53, 68. Judge Dawson also stated that the arrest was justified because Plaintiff "reach[ed] for the weapon when the officer was trying to detain him." Ex D. at Dunham002403. This particular fact is in dispute. *See* Pl.'s 56.1 Resp. ¶ 57. However, Plaintiff is collaterally estopped from arguing that he did not reach for a weapon, given that this factual issue is identical to the one decided at his suppression hearing and was necessarily decided by Judge Dawson and material to his conclusion that Plaintiff's arrest was legal. *See Grullon v. Reid*, No. 97-cv-7616, 1999 WL 436457, at *6 (S.D.N.Y. June 24, 1999) (collateral estoppel barred plaintiff from relitigating issues identical to those raised in a suppression hearing which were necessary to support a final judgment on the merits), *aff'd* 22 F. App'x 70 (2d Cir. 2001). However, even though Plaintiff is collaterally estopped from arguing that he did not reach for a weapon, this is not "incompatible with the claim of excessive force," especially considering there

are still genuine issues of material fact that must be resolved by a jury. Furthermore, the issue decided by Judge Dawson is not identical to the issue in the instant proceeding—whether the force used by Officer Lobello in executing Plaintiff's arrest was reasonable under the circumstances. Thus, summary judgment cannot be granted on this basis.

    2.  *There are Genuine Issues of Material Fact as to Whether the Force used by Officer Lobello was Reasonable Under the Circumstances*

Whether or not Plaintiff is able to survive a motion for summary judgment on his excessive force claim turns on whether the force used was "objectively unreasonable" given the circumstances. *Amnesty Am.*, 361 F.3d at 123. Courts consider factors including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Id.*

Even discrediting Plaintiff's allegation[10] that he did not reach for a weapon based on the Court's collateral estoppel analysis, Plaintiff's allegations are sufficient to create issues of fact as to the objective reasonableness of the degree of force used by the police officers *once Plaintiff was subdued*. There is evidence in the record that Officer Lobello allowed Rocco to continue biting him for approximately two minutes even as Plaintiff was subdued, lying in the street. Pl.'s 56.1 Resp. ¶¶ 55-57, 61, 63-64; Zangrilli Decl., Ex. E, Dunham Dep. at 142:17-144:24 ("Dunham Dep.") (testifying that he did not resist as the dog proceeded to bite him); Lobello

---

[10] Even discrediting that testimony, the Court is not in a position to determine whether Defendants' or Plaintiff's version of events is more credible. "It is well established that [c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment. If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." *Curry v. City of Syracuse*, 316 F.3d 324, 333 (2d Cir. 2003) (quoting *Fischl v. Armitage*, 128 F.3d 50, 55-56 (2d Cir. 1997)) (internal quotation marks omitted) (finding summary judgment would be improper where plaintiff's deposition testimony raised a genuine issue of material fact as to whether plaintiff reached for his sock such that it would be reasonable for the officer to believe plaintiff was carrying a weapon).

Dep. at 186:16-187:2 (testifying that the police dog bit Mr. Dunham for approximately two minutes).

While the first factor considered in an objective reasonableness inquiry weighs in favor of Defendants given that the crime at issue was an armed robbery, the second and third factors weigh in favor of Plaintiff. Given Plaintiff's testimony, a reasonable jury could find that he no longer posed an immediate threat to Officer Lobello and that he was no longer resisting. Therefore, a reasonable jury could also find "that the officers gratuitously inflicted pain in a manner that was not a reasonable response to the circumstances" once Plaintiff was no longer resisting arrest. *Amnesty Am.*, 361 F.3d at 124; *see also Whitfield v. City of Newburgh*, No. 08-cv-8516, 2015 WL 9275695, at *14-15 (S.D.N.Y. Dec. 17, 2017) (denying summary judgment on excessive force claim where there was testimony that decedent was tased after he was no longer resisting); *Kavazanjian v. Rice*, No. 03-cv-1923, 2008 WL 5340988, at *4 (E.D.N.Y. Dec. 22, 2008) (use of police dog while plaintiff was lying on the ground, handcuffed and fully immobilized could allow "a rational jury [to] . . . find that [defendant] used more force than was necessary"); *Bradley v. Rell*, 703 F. Supp. 2d 109, 119-20 (N.D.N.Y. 2010) (same). Therefore, the "determination as to the objective reasonableness of the force used must be made by a jury following a trial." *Amnesty Am.*, 361 F.3d at 124.

3. *Officer Lobello is Not Entitled to Qualified Immunity at this Stage of the Litigation*

A court will grant qualified immunity if "one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007)) (internal quotation marks omitted). "It is beyond dispute that the right to be free from excessive force has long been clearly established." *Green v. Montgomery*, 219 F.3d 52, 59 (2d Cir. 2000)

15

(internal citation omitted); *see also Curry*, 316 F.3d at 334. The applicability of qualified immunity in this instance thus turns on whether Officer Lobello's actions were "objectively reasonable" in light of the circumstances. *Curry*, 316 F.3d at 334. "Where the circumstances are in dispute, and contrasting accounts present factual issues as to the degree of force actually employed and its reasonableness, a defendant is not entitled to judgment as a matter of law on a defense of qualified immunity." *Id.* (quoting *Mickle v. Morin*, 297 F.3d 114, 122 (2d Cir. 2002)) (internal quotation marks omitted). Here, there are several material facts in dispute and "it is impossible to determine whether the officers reasonably believed that their force was not excessive." *Id.* (quoting *Thomas v. Roach*, 165 F.3d 137, 144 (2d Cir. 1999)) (internal quotation marks omitted). Thus, summary judgment on the basis of qualified immunity is precluded.

## II.   There are No Genuine Issues of Material Fact Pertaining to Plaintiff's Malicious Prosecution Claim and Summary Judgment is Appropriate

To prevail on a malicious prosecution claim under 42 U.S.C. § 1983, a plaintiff must show that (1) the defendant initiated a prosecution against plaintiff, (2) without probable cause to believe the proceeding can succeed, (3) the proceeding was begun with malice, and (4) the matter was terminated in plaintiff's favor. *See Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010). Probable cause is a complete defense to a § 1983 malicious prosecution claim. *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003). In general, "a grand jury indictment gives rise to a presumption that probable cause exists." *Rentas v. Ruffin*, 816 F.3d 214, 220 (2d Cir. 2016) (quoting *McClellan v. Smith*, 439 F.3d 137, 145 (2d Cir. 2006)) (internal quotation marks omitted). However, "the presumption may be rebutted by evidence of . . . fraud, perjury, [or] the suppression of evidence." *Rentas*, 816 F.3d at 220 (quoting *McClellan*, 439 F.3d at 137) (internal quotation marks omitted); *see also Savino*, 331 F.3d at 72. Additionally, a "plaintiff's testimony alone may be independently sufficient to raise a genuine issue of material fact" as it relates to

probable cause. *Bellamy v. City of New York*, 914 F.3d 727, 746 (2d Cir. 2019) (citing *Rentas*, 816 F.3d at 221). Regarding the third element, "actual malice can be inferred when a plaintiff is prosecuted without probable cause." *Rentas*, 816 F.3d at 221-22 (internal citations omitted).

The Court finds that there was probable cause to prosecute and thus Plaintiff's malicious prosecution claim must fail. Plaintiff argues (1) that Officers Lobello and Oliver initiated or continued his prosecution; (2) that there are genuine issues of material fact that defeat the presumption of probable cause and (3) that a reasonable jury could find that Defendants acted with malice.[11] Pl. Opp. at 20-24. Because the Court finds that there was probable cause to prosecute, which constitutes a complete defense to the malicious prosecution claim, the Court will focus its analysis on that element.

In asserting that there are genuine issues of material fact that defeat the presumption of probable cause, Plaintiff solely focuses on the presumption created by the grand jury indictment. Pl. Opp. at 22-24. Plaintiff argues that there is sufficient evidence in the record that would allow a jury to find that Officers Lobello and Oliver "misrepresented or falsified" evidence about the keys they found on Plaintiff's person. Pl. Opp. at 22-23. However, Plaintiff disregards the fact that Plaintiff was identified by the victim of the armed robbery on the night of his arrest, which establishes probable cause independent from the grand jury indictment. Instead Plaintiff asserts in a footnote that this ignores the core issue: "[W]hether there is evidence tending to show that 'Officers Oliver and Lobello testified falsely or misrepresented or falsified evidence' that would overcome the presumption of probable cause." Pl. Opp. at 24, n. 14 (internal citations omitted).

---

[11] Plaintiff asserts this claim only as to the robbery charges on which Plaintiff was acquitted. *See* FAC ¶ 52. Indeed, given that one of the elements of a malicious prosecution claim is termination in plaintiff's favor, Plaintiff cannot assert a malicious prosecution claim on the basis of crimes for which he was convicted. *See Jackson v. County of Nassau*, No. 06-cv-40, 2010 WL 11602593, at *5-6 (E.D.N.Y. Aug. 7, 2010) (stating that charges on which defendant was convicted could not form the basis for a malicious prosecution claim, but finding that charges on which defendant was exonerated could, even though they were all tried in a single proceeding) (citing *Janetka v. Dabe*, 892 F.3d 187, 190 (2d Cir. 1989)).

The Court disagrees. Whether there is probable cause, and whether there is evidence to overcome the presumption of probable cause created by a grand jury indictment are two separate issues. *See Frost v. New York City Police Dep't*, 980 F.3d 231, 243-44 (2d Cir. 2020) (affirming district court's dismissal of malicious prosecution claim where there was probable cause to prosecute plaintiff). In the malicious prosecution context, probable cause has been described as "such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003) (citing *Colon v. City of New York*, 455 N.E.2d 1248, 1250 (N.Y.1983)). Here, the Plaintiff was identified as the perpetrator by the victim of the armed robbery and thus, "a reasonably prudent person [would have] believe[d] plaintiff [to be] guilty." *Boyd*, 336 F.3d at 76; *see also Wahhab v. City of New York*, 386 F. Supp. 2d 277, 287 (S.D.N.Y. 2005) ("Probable cause will generally be found to exist when an officer is advised of a crime by a victim or an eyewitness."); *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) (same).[12] While there is a dispute as to when this identification occurred, *i.e.*, at the scene of the arrest or in the hospital, Pl.'s 56.1 Resp. ¶¶ 85-86, this dispute is immaterial as neither party disputes that the identification occurred. *See Anderson*, 477 U.S. at 248 (fact is material if it would "affect the outcome of the suit under the governing law"). More importantly, the identification of Plaintiff was held to be valid by Judge Dawson at the suppression hearing conducted in connection with Plaintiff's criminal trial. Ex. D at Dunham002403. Because the Court finds there was probable cause independent from the grand jury indictment, the Court need

---

[12] Probable cause to prosecute and probable cause to arrest are not the same. "For purposes of a malicious prosecution claim, the [c]ourt must evaluate whether [d]efendants had probable cause to prosecute *at the time the prosecution was initiated.* Thus, to sustain a malicious prosecution claim where probable cause existed to make the arrest, a plaintiff must show that defendants learned of intervening facts between the arrest and the initiation of the prosecution that undermined the initial probable cause determination." *Niles v. O'Donnell*, No. 17-cv-1437, 2019 WL 1411068, at *9 (S.D.N.Y. Feb. 21, 2019) (internal citations and quotation marks omitted) (emphasis added). Here, there is no evidence of "intervening facts" between the time of the arrest and the time the prosecution was initiated that undermined the initial probable cause determination created by the victim's identification of Plaintiff as the perpetrator of the armed robbery.

not reach the question of whether there is a genuine dispute of material fact regarding the basis

on which the grand jury indictment was procured. The Court finds that there was probable cause

to prosecute at the time the proceeding was initiated, which is a complete defense to Plaintiff's

malicious prosecution claim. Defendants' motion for summary judgment on Plaintiff's malicious

prosecution claim is therefore GRANTED.

### III.   There are No Genuine Issues of Material Fact Pertaining to Plaintiff's Deliberate Indifference Claim and Summary Judgment is Appropriate

The Due Process of the Fourteenth Amendment "require[s] the responsible government

or governmental agency to provide medical care to persons . . . who have been injured while

being apprehended by the police." *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983).

"[T]he official custodian of a pretrial detainee may be found liable for violating the detainee's

due process rights if the official denied treatment needed to remedy a serious medical condition

and did so because of his deliberate indifference to that need." *Weyant v. Okst*, 101 F.3d 845, 856

(2d Cir. 1996). To establish a claim for deliberate indifference, a plaintiff must satisfy (1) an

"objective prong," showing that the violations were "sufficiently serious to constitute objective

deprivations of the right to due process" and (2) a "mental element prong," showing that "the

officer acted with at least deliberate indifference to the challenged conditions." *Darnell v.

Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).

Defendants do not dispute that Mr. Dunham's injuries resulting from Rocco biting him

were "sufficiently serious" to satisfy the objective prong. *See* Defs.' Reply at 6. Thus, the Court

will focus its analysis on the mental element prong. The "mental element prong" no longer

requires a showing of subjective intent. *Darnell*, 849 F.3d at 34-36.[13] As this Circuit has held, a

---

[13] Although *Darnell* addressed a conditions of confinement claim, its reasoning "applies equally to claims of deliberate indifference to serious medical needs under the Fourteenth Amendment." *Lloyd v. City of New York*, 246 F. Supp. 3d 704, 718 (S.D.N.Y. 2017).

plaintiff "must prove that the defendant-official acted intentionally to impose the alleged

condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition

posed . . . even though the defendant-official knew, or should have known, that the condition

posed an excessive risk to health or safety." *Id.* at 35. "In other words," the court explained, "the

'subjective prong' (or '*mens rea* prong') of a deliberate indifference claim is defined

objectively." *Id.* Nevertheless, "any § 1983 claim for a violation of due process requires proof of

a *mens rea* greater than mere negligence." *Id.* at 36. Furthermore, there can be no claim of

deliberate indifference where plaintiffs receive prompt medical treatment. *See Ricks v.

O'Hanlon*, No. 07-cv-9849, 2010 WL 245550, at *8 (S.D.N.Y. Jan. 19, 2010) ("Only 'a

significant delay in medical treatment' provided to an injured arrestee may 'ris[e] to the level of

constitutional injury.'" (quoting *Santiago v. City of New York*, No. 98-cv-6543, 2000 WL

1532950, at *6 (S.D.N.Y. Oct. 17, 2000))).

There is no evidence in the record to support a finding by the jury that Officer Lobello or

Officer Oliver "acted intentionally to impose the alleged condition" or "recklessly failed to act

with reasonable care to mitigate the risk that the condition posed." Instead, the record shows that

Defendant Lobello called EMS four minutes after calling for backup. Zangrilli Decl., Ex. C at

DEF208 ("Sprint Report"). Even more importantly, it is undisputed that EMS treated Plaintiff at

the scene before taking him to the hospital. Pl.'s 56.1 Resp. ¶¶ 76, 78, 79. Because Plaintiff

received prompt medical treatment, summary judgment on this claim must be granted in favor of

Defendants.

The cases cited by Plaintiff are inapposite. As Plaintiff recognizes, in *Tardif v. City of

New York*, the parties "continue[d] to dispute how and when the officers responded to Plaintiff's

[injury]" and whether it was "sufficiently serious as to warrant certain medical care," and thus

summary judgment was denied on the deliberate indifference claim. *See Tardif*, No. 13-cv-4056, 2017 WL 3634612, at *6 (S.D.N.Y. Aug. 23, 2017). There is no such factual dispute here. And, in *Molina v. City of Elmira*, summary judgment was denied because "a reasonable jury could conclude that the officers should have observed that the [treatment provided was] insufficient to alleviate his serious medical need and that he required immediate medical care." *See Molina*, No. 12-cv-6310, 2015 WL 1643280, at *9 (W.D.N.Y. Apr. 13, 2015). Here, there is no dispute that EMS was promptly called and treated Mr. Dunham upon arrival at the scene.

Because the Court finds that there are no genuine issues of material fact as to Plaintiff's deliberate indifference claim, Defendants' motion for summary judgment on this claim is GRANTED.

### IV.    Municipal Liability Claims Against the City of New York

As set forth in *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 690-91 (1978), a municipality can be held liable under § 1983 if the deprivation of rights under federal law is caused by a governmental custom, policy, or usage of the municipality. *See also Connick v. Thompson*, 563 U.S. 51, 60-61 (2011) (finding municipalities can be held liable for "practices so persistent and widespread as to practically have the force of law"). "[T]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)) (internal quotation marks omitted). Thus, there can be no *Monell* claim established where there has been no deprivation of a constitutional right. *See Martinez v. City of New York*, No. 06-cv-5671, 2008 WL 2566565, at *4 (S.D.N.Y. June 27, 2008), *aff'd*, 340 F. App'x 700 (2d Cir. 2009) (summary order); *Brown v. City of New York*, No. 13-cv-6912, 2016 WL 616396, at *2 (S.D.N.Y. Feb. 16, 2016) ("[T]here

is no finding of *Monell* liability without first finding a constitutional violation."); *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("*Monell* does not provide a separate cause of action . . .; it *extends* liability to a municipal organization where . . .  the policies or customs that it has sanctioned, le[a]d to an independent constitutional violation." (citing *Monell*, 436 U.S. at 694)).

Defendants have not briefed Plaintiff's *Monell* claims except to say that they fail because there is no underlying constitutional violation. *See* Defs.' Mot. at 25. However, as discussed above, there are genuine issues of material fact precluding summary judgment on the excessive force claim. *Supra* pp. 14-15. Thus, the Court is also precluded from granting Defendants' motion for summary judgment on Plaintiff's *Monell* claims. The Court had previously bifurcated and stayed discovery on Plaintiff's *Monell* claims "in the interest of efficiency and convenience, and to avoid undue prejudice." *See* ECF No. 139. The Court hereby ORDERS that Plaintiff's *Monell* claims continue to be bifurcated and discovery stayed in the continuing interest of efficiency and convenience, and to avoid undue prejudice. *See, e.g.*, *Brown*, 2016 WL 616396, at *2 (recognizing that "courts in this circuit have bifurcated *Monell* claims and stayed their discovery until a plaintiff has succeeded in establishing liability on the part of the individual defendants").

## CONCLUSION

For the reasons herein, Defendants' motion for summary judgment on Plaintiff's first, fourth and fifth claims is **DENIED**. Defendants' motion for summary judgment on Plaintiff's second and third claims is **GRANTED**. Plaintiff's motion to seal is **GRANTED**. The Court hereby **ORDERS** that Plaintiff's *Monell* claims continue to be bifurcated and discovery stayed.

The Parties are also **ORDERED** to file a joint status report within 30 days of the filing of this opinion and order.

**SO ORDERED.**

**Dated: March 10, 2021**
      **New York, New York**

_____
      **ANDREW L. CARTER, JR.**
      **United States District Judge**